GILCHRIST v. CORLISS.

1. Wills—Construction—Intent of Testator.
    It is a cardinal rule in construing wills that the intent of the
    testator, when ascertained, shall govern.

2. Same—Precatory Words.
    Though it is a circumstance tending to indicate a purpose that
    the whole estate shall be vested in the legatee, and that prec-
    atory words shall be regarded as a mere suggestion, rather
    than as a direction, when it appears that the purpose to which
    the request would devote the estate is so general that the pro-
    vision is not capable of being enforced, this does not neces-
    sarily follow, for it is also a rule that precatory words will
    not be construed to confer an absolute gift on the first taker
    merely because of the failure or uncertainty in the object or
    subject of the devise.

3. Same—Estate Devised—Fee or Life Interest.
    Where testator bequeathed all the residue of his estate to his
    wife, which bequest was followed by a paragraph in which
    he requested that at his death she make her will and will at
    least two-thirds of what she received under his will to chari-
    ties to be designated by her, the amounts so willed to be pay-
    able at her death, as it was his wish that she have and use all
    the income of that portion of his estate willed to her as long
    as she should live, she did not take an absolute estate in all
    the residue affected by the provision, but only in one-third
    thereof, and on her death without disposing of the two-thirds
    as directed, the two-thirds reverted to the husband's estate,
    and as to that he died intestate.

4. Same—Bequests to Charities—Identification.
    A will making certain bequests to "women's work in foreign
    fields," to "women's work in home lands (not Tank Home),"
    and to the "Protestant missionary work among the poor col-
    ored people of the South," examined together with the cir-
    cumstances of its making and the church and missionary in-
    terests of the testator, and held, that the designations were
    not too uncertain, and that certain home and foreign mission-
    ary societies of the Congregational church were intended.

Appeal from Alpena; Emerick, J. Submitted October
9, 1908. (Docket No. 8.) Decided December 21, 1908.

Bill by Frank W. Gilchrist and others, executors of the last will and testament of Ella J. Potter, deceased, against George F. Corliss and others for a construction of said will, and a construction of the last will and testament of William H. Potter, deceased. From the decree rendered, complainants appeal. Affirmed.

*Charles R. Henry* (*Benton Hanchett*, of counsel), for complainants.

*Joseph H. Cobb* and *Alexis C. Angell*, for defendants.

MONTGOMERY, J.   William H. Potter, late of Alpena, died testate on the 1st day of September, 1896. His wife, Ella J. Potter, died testate on the 14th day of May, 1905. The complainants are the executors named in the will of Ella J. Potter. This bill is filed to obtain a construction of the will of William H. Potter and also a determination as to the validity and effect of certain bequests made in the will of Ella J. Potter. The estate of William H. Potter amounted to some $300,000. His wife had an independent estate amounting to something like $250,000.

The will of William H. Potter, after bequeathing something like $50,000 to relatives and friends, proceeds as follows:

"To my dear wife, Ella J. Potter, I give and bequeath all the balance of my real and personal estate of every name and nature and I do appoint my said wife, Ella J. Potter, administratrix, of this my last will and testament, and it is my wish and desire that she be not required to give bonds for the faithful performance of any of the conditions of this my will, as I feel assured she will carry them out without it.

"I request that at my death, my said wife, Ella J. Potter, make her will and will at least two-thirds of what she receives under this, my will, to some charities, named and designated by her, said charities to be in the city of Alpena, Michigan, and the amount so willed to be payable at her death, as it is my wish that she have and use all the income from that portion of my estate willed to her as long as she lives."

An attempt to comply with the request in the last clause of William H. Potter's will was made by Ella J. Potter, but it is conceded and it is apparent that it failed for want of a proper designation of the beneficiary, and the'.question presented upon this branch of the case is whether Ella J. Potter took an absolute indefeasible estate in all the residue of the estate of William H. Potter after the specific bequests, or whether she took an absolute estate only of one-third of such residue. In other words, whether the estate in the two-thirds vested in her heirs, or whether it vested in the heirs of William H. Potter.

It is contended on behalf of the heirs of Ella J. Potter that the case falls within *Jones* v. *Jones*, 25 Mich. 401, *Weir* v. *Michigan Stove Co.*, 44 Mich. 507, *Dills* v. *La Tour*, 136 Mich. 243, *Moran* v. *Moran*, 143 Mich. 322 (5 L. R. A. [N. S.] 323), and *Turnbull* v. *Johnson*, 153 Mich. 228, and that on the authority of these cases it should be held that a full estate was bequeathed to Ella J. Potter with full power of disposition, and that the subsequent request in the will should be treated merely as the expression of a wish, and not as a mandatory provision. In other words, that Mr. Potter did not intend to direct as to the disposition of the estate, but only to suggest. We think that no one of the cases cited is necessarily controlling in the present case. It is to be noted of the provisions of the will, first, that it does not in terms bequeath an estate in fee simple. While, doubtless, the first clause quoted would, in the absence of subsequent limitations, be adequate to convey a full estate in fee simple, it does not in terms do so. While it would also be adequate to give full power of disposition in the absence of any limitation, it does not in terms give such power of disposition. What follows therefore may well be considered either as a limitation upon the estate conveyed or as a mere suggestion, if such shall be found to be the intent of the testator, and it is a cardinal rule in construing wills that the intent of the testator, when

ascertained, shall govern. It is undoubtedly a circumstance tending to indicate a purpose that the whole estate shall be vested in the legatee, and that precatory words shall be regarded as a mere suggestion, rather than as a direction, when it appears that the purpose to which the request would devote the estate is so general that the provision is not capable of being enforced; but this does not necessarily follow, for it is laid down as a rule that precatory words will not be construed to confer an absolute gift on the first taker merely because of the failure or uncertainty in the object or subject of the devise. See *Maught* v. *Getzendanner*, 65 Md. 527, and authorities cited; *Minot* v. *Attorney General*, 189 Mass. 176; *Abrey* v. *Duffield*, 149 Mich. 257.

The point is that the vagueness of the purpose is evidence that the intention to impress a trust is wanting. The testator in such case has reposed a larger discretion in the donee, and from this fact an inference is sometimes drawn that the precatory words are used by way of suggestion, rather than as words of command or direction. So, also, where it appears that the purpose is too vague to be capable of enforcement, and hence to exclude the trust in a legal sense, the rule that such a construction should be given, if reasonably open, as to avoid intestacy, is to be considered. These rules, however, are to be considered in connection with the rule that the intent of the testator, as gathered from the whole instrument, should control wherever no positive rule is infringed.

In this case, the intent to limit the bequest to the wife to the one-third of the testator's estate and the use of the remaining two-thirds is manifest. In my view, it is a significant fact that a disposition of the two-thirds received by Ella J. Potter was expected to be made by her will to be made *at the death of the testator*, William H. Potter. It was intended that it should *then be* devoted to the purpose indicated, namely, some charities to be located in the city of Alpena. It is also significant that in this same

clause it is provided that the amounts so willed by her should be payable *at her death*, and the reason why it should be so payable at her death is doubly significant, namely, "as it is my wish that she have and *use all the income* from that portion of my estate willed to her as long as she lives." There can be no doubt that what William H. Potter desired was that the two-thirds of the estate left after the specific bequests should be set apart and should go to certain charities to be designated by Ella J. Potter, but that the corpus of the estate should be kept intact until her death, and that she should have the use and income of the entire of it as long as she lived. We find no obstacle in the previous provisions of the will, namely, in the clause, "I give and bequeath all the balance of my real and personal estate of every name and nature to my dear wife, Ella J. Potter," to carrying into effect this intent of the testator, for, as above stated, there is in terms no declaration that the purpose is to convey an estate in fee simple. There is no authority conferred in terms to dispose of the estate absolutely, and this authority can only arise by implication. We do not understand the cases above cited from our own reports as laying down a rule that such implication shall be permitted to stand in the way of express provisions embodied in a later clause in the will.

It is not contended but that precatory words, if the intent is manifest, may be treated as mandatory. See 20 Central Law Journal, p. 63; *Colton* v. *Colton*, 127 U. S. 300; *Trustees of Hillsdale College* v. *Wood*, 145 Mich. 257. But it is contended that there is a distinction between the case of an attempt by the testator by use of positive trust terms to create an express trust and where, by reason of the uncertainty in respect to the intended beneficiaries the attempt to create the trust fails, and the case of the use of precatory words expressing a request or wish in respect to the disposition of property, and the same uncertainty exists in regard to the intended beneficiaries. It is contended that, in the first case, the courts

hold that the testator intended to put the property into the trust, and the title and disposition of the property is affected by such attempt to put the property in the trust. In the latter case, the use of precatory words, the courts hold that, by reason of the uncertainty of the beneficiaries, no trust was intended or attempted, and the disposition of the property is in no way affected by the use of precatory words; the precatory words only express a wish. As already indicated, this is stating the rule too strongly. It is true that a trust cannot arise under our statute (3 Comp. Laws, § 8839, subd. 5), unless fully expressed and clearly defined on the face of the instrument creating it; but it does not follow that, in the attempt to create a trust by the use of either positive or precatory words, the intent may not be made manifest to withdraw from the donee a title otherwise apparently conferred. We think from reading the provisions of the will together it is manifest that Mr. Potter did not intend that his wife should be at liberty to use the body of the estate, that he clearly intended to limit her to one-third and the income of the remaining two-thirds, and that the word "request," in the connection in which it is here used, is just as signficant of this intent as would have been the word "will" or "direct," and should be held mandatory, and that, while there may have been a failure to create an express trust, there was no failure in expressing a purpose to limit the bequest to Ella J. Potter in her own right. It follows that as to the two-thirds of his estate he must be said to have died intestate.

It remains to consider the effect of certain items in the will of Mrs. Potter. Item fourth reads as follows:

"To women's work in foreign fields, and to women's work in home lands (not Tank Home) I give and bequeath each society or work, the sum of five thousand dollars ($5,000.00)."

The circuit judge held that by the bequest "to women's work in foreign fields" was meant the "Women's Board of Missions of the Interior." There was evidence offered

which shows that Mrs. Potter was a member of the Congregational Church, and that this church carried on a work in behalf of women in foreign fields through the instrumentality of a corporation, under the title of the "Women's Board of Missions of the Interior." It also appeared that Mrs. Potter was a subscriber to Mission Studies, on the title page of which appears: "Mission Studies. Women's work in Foreign Lands." There is a corporation in Michigan known as the "Women's Home Missionary Union of the Congregational Churches of Michigan." It was in evidence that Mrs. Potter was at one time president of the local missionary society in Alpena, and that this society is an auxiliary of the Women's Home Missionary Union of the Congregational Churches of Michigan, and that the local society sends delegates to the State society. The court held that this society was the beneficiary intended by the use of the words "women's work in home lands."

It is claimed that the designation of the beneficiary was too uncertain. We do not concur in this view. In *Gilmer* v. *Stone*, 120 U. S. 586, the bequest was of the remainder of the testator's estate, to be equally divided between the board of foreign and the board of home missions. This was the only designation. It was in evidence that there are various denominations having a board of foreign missions and a board of home missions. The testator, however, was shown to be a member of the Presbyterian Church and a contributor to the missions established by that church, and it was held that the Board of Foreign Missions of the Presbyterian Church in the United States of America and the Board of Home Missions of the Presbyterian Church in the United States of America were intended by the designation made. We think the uncertainty in the present case is no greater than in that case. The evidence in that case was of a similar character, and it was said of this testimony:

"The purpose of it was to place the court, as far as possible, in the situation in which the testator stood, and

thus bring the words employed by him into contact with the circumstances attending the execution of the will. Such proof does not contradict the terms of that instrument, nor tend to wrest the words of the testator from their natural operation. It serves only to identify the institutions described by him as 'the board of foreign and the board of home missions,' and thus the court is enabled to avail itself of the light which the circumstances, in which the testator was placed at the time he made the will, would throw upon his intention."

See, also, *Cook* v. *Universalist General Convention*, 138 Mich. 157.

There was also a bequest, item tenth of the residuary clause of her will, to the Protestant missionary work among the poor colored people of the South. This amount is claimed by the American Missionary Association, which is shown also to be a corporation organized by the Congregational Churches. It was shown that Mrs. Potter was a subscriber to the American Missionary, in which the work among the poor colored people of the South was described, and there was, in addition, evidence of an expression of an intention to do something for this society. The same considerations which control as to item fourth control as to this.

The decree of the circuit court will be affirmed.

GRANT, C. J., and BLAIR, MOORE, and McALVAY, JJ., concurred.