INDENBAUM v MICHIGAN BOARD OF MEDICINE (AFTER REMAND)

Docket No. 164159. Submitted April 11, 1995, at Detroit. Decided September 8, 1995, at 9:00 A.M. Leave to appeal sought.

Samuel Indenbaum, M.D., and Felix J. Liddell, M.D., requested a declaratory ruling from the Michigan Board of Medicine concerning the applicability of § 16221(e)(iv) of the Public Health Code, MCL 333.16221(e)(iv); MSA 14.15(16221)(e)(iv), to the factual situation presented by the petitioners, who refer their patients and patient specimens to facilities in which the petitioners are limited partners, but don't require that the patients use the facilities. The statute provides that a licensed health care professional shall be disciplined for unprofessional conduct consisting of "directing or requiring" an individual to purchase or secure a drug, device, treatment, procedure, or service from another person, place, facility, or business in which the licensee has a financial interest. The board ruled that the petitioners had violated the statute. The petitioners appealed, and the Oakland Circuit Court, Barry L. Howard, J., entered an order reversing the board's declaratory ruling on the ground that the board deprived the petitioners of adequate notice by failing to promulgate rules delineating the prohibited conduct. The respondents, the board and the Michigan Department of Licensing and Regulation, appealed and the Court of Appeals, BRENNAN, P.J., and MACKENZIE and T. M. BURNS, JJ., reversed the circuit court's order, on the ground that it had erred in deciding an issue that was not properly before it, i.e., the absence of promulgated rules, and remanded the matter to allow the circuit court to place on the record the reasons for its decision. Unpublished opinion per curiam of the Court of Appeals, decided August 6, 1992 (Docket No. 129223). On remand, the circuit court again reversed the board's decision, finding that the board erroneously had expanded the definition of "direct or require" to be synonymous with "refer," and had failed to

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers § 144.
See ALR Index under Discipline and Disciplinary Actions; Physicians and Surgeons; Referrals.

provide the petitioners with notice of the prohibited conduct, thus rendering the terms unconstitutionally vague. The respondents appealed.

After remand, the Court of Appeals *held:*

1. The common and approved usage of the word "requiring" in the context of this case calls for mandatory or compulsory action in the nature of a command or order. The common and ordinary meaning of the word "directing" in the context of this case is not limited only to commands or orders. The word "directing" has a meaning that emphasizes the steps necessary to achieve a purpose, i.e., guiding, managing, regulating, or controlling by advice, instructions, orders, or commands.

2. The harm that § 16221(e)(iv) is designed to attack is the problem of overutilization of health services. In interpreting § 16221(e)(iv), "directing" means guiding, managing, regulating, or controlling by advice, instructions, orders, or commands, and does not exclude "referring." The emphasis is on the steps necessary to accomplish a purpose.

3. The petitioners are "directing or requiring" in violation of the plain language of § 16221(e)(iv) when they refer to a facility in which they have a financial interest patients who either choose to use their facility or who have not chosen to use another facility. The board's ruling that the petitioners were "directing or requiring" in violation of § 16221(e)(iv) was not an abuse of discretion or affected by a substantial and material error of law. The trial court erred in holding otherwise.

4. The board's interpretation of the words "directing or requiring" did not render the terms unconstitutionally vague. The board's decision was supported by competent, material, and substantial evidence. The order of the circuit court must be reversed and the board's declaratory ruling must be reinstated.

Reversed.

1. PHYSICIANS AND SURGEONS — PUBLIC HEALTH CODE — UNPROFESSIONAL CONDUCT — WORDS AND PHRASES — "REQUIRING" — "DIRECTING."

The common and approved usage of the word "requiring" in § 16221(e)(iv) of the Public Health Code calls for mandatory or compulsory action in the nature of a command or order; the common and ordinary meaning of the word "directing" in the statute is not limited only to commands or orders; "directing" has a meaning that emphasizes the steps necessary to achieve a purpose, i.e., guiding, managing, regulating, or controlling by advice, instructions, orders, or commands (MCL 333.16221[e][iv]; MSA 14.15[16221][e][iv]).

2. PHYSICIANS AND SURGEONS — PUBLIC HEALTH CODE — UNPROFES-
   SIONAL CONDUCT — WORDS AND PHRASES — "DIRECTING" —
   "REFERRING."
   The term "directing" in § 16221(e)(iv) of the Public Health Code
   means guiding, managing, regulating, or controlling by advice,
   instructions, orders, or commands, and does not exclude "refer-
   ring;" a licensed health care professional directs or requires in
   violation of the act by referring to a facility in which the
   health care professional has a financial interest patients who
   choose to use the facility or who have not chosen to use
   another facility (MCL 333.16221[e][iv]; MSA 14.15[16221][e][iv]).

*Barris, Sott, Denn & Driker* (by *Eugene Driker, Daniel M. Share,* and *David L. Rogers*), for the petitioners.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Howard C. Marderosian,* Assistant Attorney General, for the respondents.

AFTER REMAND

Before: CONNOR, P.J., and SMOLENSKI and W. J. NYKAMP,* JJ.

SMOLENSKI, J. Respondents Michigan Board of Medicine (the board) and Michigan Department of Licensing and Regulation appeal as of right a circuit court order reversing a declaratory ruling issued by the board. For the reasons that follow, we reverse the circuit court's order and reinstate the board's declaratory ruling.

Section 16221 of the Public Health Code (PHC), MCL 333.1101 *et seq.;* MSA 14.15(1101) *et seq.,* provides that a licensed health care professional shall be disciplined for the following:

* Circuit judge, sitting on the Court of Appeals by assignment.

(d) Unethical business practices, consisting of any of the following:

\* \* \*

(ii) Dividing fees for *referral* of patients or accepting kickbacks on medical or surgical services, appliances, or medications purchased by or in behalf of patients.

\* \* \*

(e) Unprofessional conduct, consisting of any of the following:

\* \* \*

(iv) *Directing or requiring* an individual to purchase or secure a drug, device, treatment, procedure, or service from another person, place, facility, or business in which the licensee has a financial interest. [MCL 333.16221(d)(ii) and (e)(iv); MSA 14.15(16221)(d)(ii) and (e)(iv). Emphasis supplied.]

In November 1988, petitioners, who are physicians, requested from the board a declaratory ruling pursuant to § 63, MCL 24.263; MSA 3.560(163), of the Administrative Procedures Act (APA), MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, concerning the applicability of § 16221(e)(iv) of the PHC to the following facts:

The Physicians are licensed to practice medicine under the Michigan Public Health Code, and each practices in a private medical office. Each owns a limited partnership interest in a free-standing health care facility to which he refers patients or patient specimens.

There is nothing in the facility's limited partnership agreement (or in any other agreement) requiring that the Physicians refer patients or patient specimens there. In fact, the facility's partnership agreement expressly prohibits physician-partners from "directing or requiring" patients to use the facility. Some of the facility's physician-partners use competing facilities in addition to using this one. Each physician receives a distribution of the .

facility's business profits based solely on his proportionate ownership interest in the facility, without regard for his referrals. The amount of a physician-partner's ownership shares does not depend on referrals, and physician-owners receive no payments in exchange for referrals.

Each of the Physicians has posted signs in this office, readily visible to patients needing the facility's services, containing this language:

"IMPORTANT INFORMATION

"In connection with the treatment of our patients it may be necessary to refer them or submit patient specimens to a [type of facility]. Where appropriate our office uses [name of facility], which is owned in part by members of this office.

"In addition to this [facility], there are other qualified [facilities] capable of providing the required service, including those at hospitals to which members of this office admit patients. If you wish, we will refer you to another qualified [facility].

"WE NEITHER DIRECT NOR REQUIRE YOU TO USE [name of facility]."

Each Physician refers to the facility patients (or specimens of patients) who choose to use it, and patients who have not chosen another facility. However, it is the policy of each Physician's office to accommodate without discouragement any patient who asks to use another qualified facility.

*The question for which we seek a declaratory ruling is this: When a Physician refers a patient or specimen to a facility in which he is a limited partner under the circumstances set forth above, is the Physician "directing or requiring" in violation of Section 16221(1)(e)(iv)?* [1]

After hearing arguments by petitioners and the Attorney General, the board ruled that petitioners had violated § 16221(e)(iv) of the PHC:

---

[1] The subsection numbering used in § 16221 of the PHC was deleted by 1989 PA 15.

At the May 17, 1989, meeting of the Michigan Board of Medicine, the Board ruled that when a physician refers a patient or specimen to a facility in which he is a limited partner under the circumstances set forth by Doctors Indenbaum and Liddell, the physician is "directing or requiring" in violation of Section 16221(1)(e)(iv)[2] . . . .

Please be advised that this declaratory ruling is based solely upon the factual circumstances described above; nor is this ruling to be construed as expressing an opinion as to the possible application of any other law or regulation to the factual circumstances described.

Petitioners appealed to the circuit court. The court reversed the board's ruling on the ground that it had deprived petitioners of adequate notice by failing to promulgate rules delineating the prohibited conduct. Respondents appealed to this Court. This Court reversed the circuit court's order on the ground that the circuit court had erred in deciding an issue not properly before it, i.e., the absence of promulgated rules, and remanded for the purpose of placing on the record the court's reasons for its decision pursuant to § 106 of the APA, MCL 24.306; MSA 3.560(206) (scope of review). *Indenbaum v Michigan Bd of Medicine,* unpublished opinion per curiam of the Court of Appeals, decided August 6, 1992 (Docket No. 129223).

On remand, and pursuant to § 106(2) of the APA, the trial court again reversed the board's ruling that petitioners had violated § 16221 of the PHC. See MCL 24.306(2); MSA 3.560(206)(2). The trial court noted that "direct or require" is not defined in the PHC. The court stated that in looking to case law for the common legal usage of "direct or require," pursuant to established rules of statutory

---

[2] See n 1, *supra.*

construction, "it is obvious that the two elements are frequently used together to express an element of authority or compulsion that is not present in the term refer." The trial court determined that the board erroneously had expanded the definition of "direct or require" to be synonymous with "refer." The trial court stated that consequently § 16221(e)(iv) of the PHC now prohibited not only unprofessional conduct, but also erroneously limited a physician's ability to perform his professional duty, which the trial court defined as the ability of a physician to refer a fully informed patient to a facility that the physician believes is best for the patient's needs. The trial court concluded that the board's interpretation of "direct or require" was an abuse of discretion and affected by a substantial and material error of law. See MCL 24.306(1)(e) and (f); MSA 3.560(206)(1)(e) and (f). The trial court also determined that the board's interpretation of "require or direct" failed to provide petitioners with notice of the prohibited conduct, and thus rendered those terms unconstitutionally vague. See MCL 24.306(1)(a); MSA 3.560(206)(1)(a). On appeal, after remand, the board argues that the circuit court's reversal of its declaratory ruling was erroneous.

This Court reviews the board's declaratory ruling to determine whether it was authorized by law and supported by competent, material, and substantial evidence. Const 1963, art 6, § 28; MCL 24.306; MSA 3.560(206); *Ludington Service Corp v Acting Comm'r of Ins,* 444 Mich 481, 490; 511 NW2d 661 (1994), amended 444 Mich 1240 (1994). In this case, neither party contends that the board's decision was not supported by competent, material, and substantial evidence. Rather, the issue in this case is the interpretation of "directing or requiring" as used in § 16221(e)(iv) of the PHC,

and its application to the undisputed facts. This Court gives some deference to an agency's interpretation of a statute. *Ludington, supra,* at 505. However, the agency's interpretation is not binding on this Court and cannot be used to overcome a statute's plain meaning. Id.

The board argues that its declaratory ruling was not an abuse of discretion or affected by an error of law because petitioners were "directing or requiring" in violation of the plain language of § 16221(e)(iv) of the PHC by sending or referring their patients or patients' specimens to a facility in which they held a financial interest under the circumstances of this case. Petitioners respond that the circuit court's reversal of the board's declaratory ruling was not erroneous because the plain language of § 16221(e)(iv) means that the Legislature did not intend to prohibit all referrals, but, rather, intended to prohibit only those referrals that are mandatory or compulsory in the nature of a command or order.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993). The first criterion in determining intent is the specific language of the statute. *House Speaker v State Administrative Bd,* 441 Mich 547, 567; 495 NW2d 539 (1993). The Legislature is presumed to have intended the meaning it plainly expressed. *Frasier v Model Coverall Service, Inc,* 182 Mich App 741, 744; 453 NW2d 301 (1990). Courts may not speculate regarding the probable intent of the Legislature beyond the words expressed in the statute. If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Nat'l Exposition Co v Detroit,* 169 Mich App 25, 29; 425 NW2d 497

(1988). If reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). Given the parties' disagreement concerning the interpretation of "directing or requiring," we believe that judicial construction is appropriate.

Unless defined in the statute, every word or phrase of a statute should be construed and understood according to the common and approved usage of the language, taking into account the context in which the words are used. Technical terms and terms that have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to such peculiar and appropriate meaning. MCL 8.3a; MSA 2.212(1); *In re Public Service Comm's Determination Regarding Coin-Operated Telephones, Direct-Inward Dialing, and Touchtone Service, No 2,* 204 Mich App 350, 353; 514 NW2d 775 (1994). When, as here, a word is not defined in the statute, a court may consult dictionary definitions. *Popma v Auto Club Ins Ass'n,* 446 Mich 460, 470; 521 NW2d 831 (1994).

In this case, as noted by the trial court, the words "directing or requiring" are not defined in the PHC. Petitioners cite several authorities[3] for their argument that the common and approved usage of "directing or requiring" calls for manda-

---

[3] See, e.g., *Gilchrist v Corliss,* 155 Mich 126, 131; 118 NW 938 (1908) (The decedent's use in his will of the word "request," in the context in which it is used, is just as significant of his intent "as would have been the word 'will' or 'direct,' and should be held mandatory . . . ."); *Samuel Reiter Painting Co v Bill Miedler Homes, Inc,* 87 Mich App 75, 78; 273 NW2d 592 (1978) ("Both 'require' and 'shall' indicate an intent to make the provisions mandatory."); 12A Words and Phrases, Direct, pp 72-83; but see *Grover v Wood,* 337 Mich 467, 470; 60 NW2d 316 (1953) (Unlike *Gilchrist, supra,* "[t]he fact that the word 'request' may, under certain circumstances, be held to convey a command is not conclusive of its meaning here.").

tory or compulsory action in the nature of a command or order, rather than discretionary or advisory action.

After reviewing the authorities with respect to the word "requiring," we will assume that the common and approved usage of this word in the context of this case calls for mandatory or compulsory action in the nature of a command or order. See *Random House Webster's College Dictionary* (1995) (to order or enjoin to do something; to ask for authoritatively or imperatively; demand); Black's Law Dictionary (6th ed) (to direct, order, demand, instruct, command, claim, compel, request, need, exact); 37 Words and Phrases, Require.

However, § 16221(e)(iv) uses the terms "directing or requiring" in the disjunctive. In construing a statute, the court should presume that every word has some meaning and should avoid any construction that would render a statute, or any part of it, surplusage or nugatory. *Altman v Meridian Twp,* 439 Mich 623, 635; 487 NW2d 155 (1992); *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956). As far as possible, effect should be given to every phrase, clause, and word. *Gebhardt v O'Rourke,* 444 Mich 535, 542; 510 NW2d 900 (1994); *Jenkins v Great Lakes Steel Corp,* 200 Mich App 202, 209; 503 NW2d 668 (1993). Although frequently misused and more readily departed from than other words, the literal meaning of the words "and" or "or" should be followed if their accurate reading does not render the sense dubious. *Nolan v Dep't of Licensing,* 151 Mich App 641, 648-649; 391 NW2d 424 (1986).

After reviewing the authorities with respect to the word "directing," we cannot agree with petitioners that the common and ordinary meaning of this word in the context of this case is limited only

to commands or orders. When used as a verb, "directing" is defined as follows:

> 1. to manage or guide by advice, instruction, etc.
> 2. to regulate the course of; control. 3. to administer, manage; supervise . . . . 4. to give authoritative instructions to; command; order or ordain . . . . 5. to serve as a director in the production or performance of (a musical work, play, motion picture, etc.). 6. to tell or show (a person) the way to a place; guide. 7. to aim or send toward a place or object . . . . 8. to channel or focus toward a given result, object, or end (often fol. by *to* or *toward*) . . . . 9. to address (words, a speech, etc.) to a person or persons. 10. to address (a letter, package, etc.) to an intended recipient. . . . . [*Random House Webster's College Dictionary* (1995).]

The word "direct," when used as a verb, is also defined as follows:

> To point to; guide; order; command; instruct. To advise, suggest; request. [Black's Law Dictionary (6th ed).]

We find helpful the following distinction:

> DIRECT, ORDER, COMMAND mean to issue instructions. Direct suggests also giving explanations or advice; the emphasis is on steps necessary to accomplish a purpose: *He directed me to organize the files.* Order connotes a more personal relationship and instructions that leave no room for refusal: *She ordered him out of the class.* Command suggests greater formality and a more fixed authority: *The officer commanded the troops to advance.* [*Random House Webster's College Dictionary* (1995), "Direct," p 381.]

Thus, it appears that "directing" has a meaning that emphasizes the steps necessary to achieve a

purpose—guiding, managing, regulating or controlling by advice, instructions, orders, or commands. *Random House Webster's College Dictionary* (1995); Black's Law Dictionary (6th ed); see also 12A Words and Phrases, Direct, Directed, Directing, Direction. When read in the disjunctive, this interpretation gives effect to the Legislature's use of both "directing" and "requiring" in § 16221(e)(iv) and avoids an interpretation that would render "directing" surplusage or nugatory. *Gebhardt, supra; Altman, supra; Melia, supra.*

Petitioners and the board also cite two Attorney General opinions and several failed legislative bills to support their respective arguments that their interpretation of "directing or requiring" is the correct interpretation. In order to ascertain and give effect to legislative intent, the changes in the act must be construed in light of preceding statutes and the historical legal development of the statute. *M D Marinich, Inc v Michigan Nat'l Bank,* 193 Mich App 447, 452; 484 NW2d 738 (1992); *Great Lakes Steel v Dep't of Labor,* 191 Mich App 323, 327; 477 NW2d 124 (1991). An opinion of the Attorney General, while not precedentially binding, can be persuasive authority. *Ludington & N R Co v Epworth Assembly,* 188 Mich App 25, 40; 468 NW2d 884 (1991). Thus, we examine these opinions and bills to determine whether this history aids in the analysis of the interpretation of "directing or requiring."

In a 1977 Attorney General opinion, the Attorney General was asked whether it was illegal for a physician to refer patient specimens to a clinical laboratory in which the physician held a financial interest. OAG, 1977-1978, No 5229, p 234 (September 30, 1977) (hereinafter OAG No 5229). The Attorney General examined several antikickback statutes, including § 11(2)(f) of the Medical Prac-

tice Act (MPA), 1973 PA 185, MCL 338.1801 *et seq.*; MSA 14.542(1) *et seq.*, repealed by 1978 PA 368, MCL 333.25101; MSA 14.15(25101), which provided for discipline for the following "unprofessional and dishonest conduct":

> "Willfully betraying a professional secret, engaging in the division of fees for referral of patients, or accepting kickbacks on medical or surgical services, appliances, or medications purchased by patients." [OAG No 5229, *supra* at 235 (quoting 1973 PA 185, MCL 338.1811(2)(f); MSA 14.542(11) (2)(f), repealed by 1978 PA 368, MCL 333.25101; MSA 14.15(25101) (emphasis deleted).]

The Attorney General concluded that the law prohibited a physician from receiving a rebate, kickback, or division of fees from a clinical laboratory for referring patient specimens. OAG No 5229, *supra* at 235-236. However, the Attorney General noted that physicians and patients would both benefit economically when a group of physicians pooled their resources to purchase equipment that each physician could use. The Attorney General thus concluded that, in the absence of an explicit statutory prohibition, a physician's referral of patient specimens to a clinical laboratory in which the physician held a financial interest was not illegal where the physician's remuneration was not tied to the number of referrals or percentage of income attributable to such referrals. *Id.* at 236-237. The Attorney General further stated:

> I recognize that one of the reasons why members of the public view with suspicion any arrangement by which a physician receives a financial benefit from making a referral of a specimen of his patient to a clinical laboratory is that they believe a physician will thereby be tempted to over-utilize the laboratory services and thereby increase his

income. This concern must be addressed to the legislature. [*Id.* at 237.]

The following year, the Legislature enacted the PHC. 1978 PA 368, MCL 333.1101 *et seq.*; MSA 14.15(1101) *et seq.* In a 1979 Attorney General opinion, the Attorney General was asked to construe the "directing or requiring" prohibition of § 16221(e)(iv)[4] of the PHC. OAG, 1979-1980, No 5498, p 186 (June 8, 1979) (hereinafter OAG No 5498). The Attorney General stated that this prohibition was "obviously the legislature's response" to the statement in OAG No 5229 that an attempt to regulate a physician's referral of a patient's specimen to a laboratory in which the physician held a financial interest should be left to the Legislature. *Id.* at 188. The Attorney General also stated that this prohibition represented a legislative attack "on the problem of overutilization of health services by providing for disciplinary proceedings where the licensee has directed or required a patient to purchase a drug, device, treatment, procedure or service from [an entity] in which the licensee has a financial interest." *Id.* The Attorney General concluded that a physician has a "financial interest" in a clinical laboratory if the physician is a proprietor, a partner, a limited partner, a shareholder, or has a similar business interest. *Id.* at 189. The Attorney General also concluded that physician disclosure of the physician's financial interest in an entity to which a

_____

[4] The "directing or requiring" prohibition was originally enacted as § 16221(e)(iii) of the PHC, 1978 PA 368, § 16221(e)(iii), MCL 333.16221(e)(iii); MSA 14.15(16221)(e)(iii), and is so cited by the Attorney General in OAG No 5498. However, the "directing or requiring" prohibition was redesignated as § 16221(1)(e)(iv) of the PHC by 1986 PA 319, § 16221(1)(e)(iv), MCL 333.16221(1)(e)(iv); MSA 4.15(16221)(1)(e)(iv), and is so cited (with the omission of the subsection numbering, see n 2, *supra*), in this opinion's discussion of OAG No 5498 for the sake of clarity.

person is directed or required to obtain an item, service, or procedure does not avoid a violation of § 16221(e)(iv). *Id.*

Petitioners also point to a bill introduced in the Senate in 1979 that would have amended the PHC to define "material financial interest" as "ownership of more than 5%." SB 498. We note that a second bill would have amended § 16221(e) of the PHC to define as unprofessional conduct a physician's directing or requiring a patient to a facility in which the physician had "a MATERIAL financial interest." SB 497. The board contends that SB 498, presumably in conjunction with SB 497, would have allowed a physician to direct a patient to a facility in which the physician had a financial interest of five percent or less, and that the failure of SB 498 represents the Legislature's intent to prohibit a physician from referring a patient to a facility in which the physician has any financial interest. However, this bill sheds no light on the Legislature's intent in using the terms "directing or requiring" in § 16221(e)(iv).

In 1983, a bill was introduced in the Senate that would have amended the PHC to define "material financial interest" as more than five percent of the capital or profits of a business entity with certain specified exceptions, and to define "overutilization" as unnecessarily ordered or overprescribed health services. SB 531. The bill would have deleted the "directing or requiring" language of § 16221(e) of the PHC and would have amended this subsection to prohibit a licensed health care professional from engaging "overutilization," as well as "referring" a patient or "submitting" a patient's specimen to a clinical laboratory in which the professional had a material financial interest unless the professional displayed a notice disclosing his financial interest and indicating that another qualified facility could

be selected.[5] SB 531. The board argues that the failure of this bill, together with OAG No 5498, which concluded that physician disclosure would not avoid a violation of § 16221(e)(iv), indicates that the Legislature did not intend to allow a physician to avoid the prohibition of § 16221(e)(iv) by posting a notice in his office.

However, as noted by petitioners, the Attorney General, in a 1989 memorandum to the board concerning this case, pointed out that OAG No 5498 did not address the issue, as in this case, whether providing a patient with an opportunity to choose a qualified facility other than the facility in which the physician has a financial interest would prevent a violation of § 16221(e)(iv) of the PHC. Thus, the board's argument that petitioners' notice did not prevent a violation of § 16221(e)(iv) is not dispositive, and, again, sheds no light on the Legislature's intent in using the terms "directing or requiring." Moreover, a reasonable argument could also be made that the Legislature's rejection of SB 531, which would have replaced the "directing or requiring" language with a prohibition against "referring" a patient or "submitting" a patient's specimen unless certain conditions were met, may indicate a legislative intent to distinguish between "referring" and "directing or requiring." See also 1985 SB 56, which was originally introduced with language substantially similar to 1983 SB 531, but which retained the "directing or requiring" prohibition when subsequently enacted as 1986 PA 319, MCL 333.16221(e)(iv); MSA 14.15(16221)(e)(iv). A court may consider the changes in a bill during its passage in determining the meaning intended by the Legislature. *Kizer v*

---

[5] As pointed out by the board, petitioners' notice is remarkably similar to the notice proposed in 1983 SB 531.

*Livingston Co Bd of Comm'rs,* 38 Mich App 239, 246-247; 195 NW2d 884 (1972).

In accord, petitioners point to a 1981 bill, which would have amended the PHC to define "financial interest" as an interest in a business entity with certain specified exceptions, including the physician's own sole or group practice. HB 4867. This bill would have amended § 16221(d) (unethical business practices) to prohibit a physician from dividing fees for patient referrals, accepting kickbacks, or owning any financial interest in an entity to which a patient or patient's specimen is "referred." HB 4867. Concerning § 16221(e) (unprofessional conduct), this same bill would have retained the prohibition against "directing or requiring an individual to purchase or secure [a medical necessity] from [an entity] in which the licensee has a financial interest," and added an additional prohibition against "directing or requiring the purchasing or securing of, or arranging on behalf of any individual for the purchasing or securing of, a medical [necessity] from [an entity] in which the licensee has a financial interest." HB 4867. Petitioners argue that the Legislature's failure to pass this bill indicates an intent not to prohibit "mere physician ownership-and-referral." However, where HB 4867 would have prohibited a physician both from owning a financial interest in an entity to which a patient is "referred," and from "directing or requiring" the purchase of a service or procedure from an entity in which the physician has a financial interest, a reasonable argument can also be made that the Legislature did not intend to distinguish between the term "referring" and the terms "directing or requiring." Thus, we conclude that the failed bills cited by both parties shed conflicting light on the Legislature's intent in

the use of the terms "directing or requiring" in § 16221(e)(iv).

However, our own independent research reveals the following legislative analysis of HB 4867:

> The intent of the [directing or requiring] language, according to persons involved in the drafting of the code, was to prevent the occurrence of certain kinds of conflict of interest generated by provider ownership of *referral facilities* which can lead to the overutilization of health care services for personal gain. . . .
>
> Some persons feel that new legislation should be passed which repairs the alleged defects of the current law, but which achieves *the same basic purpose of prohibiting health care providers from benefitting financially from referrals.* [House Legislative Analysis, HB 4867, November 12, 1981. Emphasis supplied.]

Moreover, the legislative analysis of 1985 SB 56, enacted as 1986 PA 319, indicates that it was introduced for the following purpose:

> [SB 56] would amend the Public Health Code to expand upon the code's provisions designed to prevent health care professionals from making certain types of *referrals* strictly for their own personal gain. [Senate Legislative Analysis, SB 56, March 11, 1985. Emphasis supplied.]

This analysis makes clear that the provision at issue is the "directing or requiring" prohibition of § 16221(e) of the PHC. Senate Legislative Analysis, SB 56, March 11, 1985. A substitute bill for SB 56 was subsequently approved. 1986 Journal of the Senate 2583; 1986 Journal of the House 4586. The legislative analysis of the substituted SB 56 indicates that the "directing or requiring" prohibition of § 16221(e) applies to "all licensed health profes-

sionals with *referral* authority . . . and, arguably, to a wide range of *referrals.*" See Senate Legislative Analysis, SB 56, February 4, 1987; House Legislative Analysis, SB 56, December 2, 1986; Senate Legislative Analysis, SB 56, May 29, 1986. Thus, it would appear from the foregoing legislative analyses that the Legislature did not intend to exclude "referrals" from the "directing or requiring" language of § 16221(e)(iv).

Nevertheless, petitioners emphasize the principle of statutory construction that "in construing an amendment to a statute, it is presumed that a change in phraseology implies that a change in meaning was also intended."[6] *Greek v Bassett,* 112 Mich App 556, 562; 316 NW2d 489 (1982). Petitioners argue strenuously that the Legislature's distinct use of the words "directing or requiring" in § 16221(e)(iv) rather than the term "referral," as used in § 16221(d)(ii), evidences the Legislature's intent to prohibit physicians only from mandating that patients go to a facility in which they have a financial interest, and not from referring patients to a facility in which they have a financial interest. "Referral" is defined as "an act or instance of referring." *Random House Webster's College Dictionary* (1995). "Referring" is defined as follows:

> 1. to direct to a person, place, etc., for information or anything required. 2. to direct the attention of . . . . 3. to submit for decision, information, etc. . . . 4. to assign to a class, period, etc.; classify. 5. to have relation; relate; apply. . . . 6. to direct attention. 7. to have recourse, as for aid or information. 8. to make reference or allusion. [*Random House Webster's College Dictionary* (1995).]

---

[6] In this case, the presumption does not apply because we are not concerned with the amendment of an existing statute, but, rather, with a statute enacted with arguably analogous terms. Nevertheless, the principle is useful.

See also Black's Law Dictionary (6th ed). Obviously, "referring" and "directing" have analogous meanings.

Not every change in statutory language should be given weight. When interpreting a statute, a court must not confuse style with substance. A particular format may be chosen by the drafters for clarity of form rather than to create a substantive meaning. *People v Harrison,* 194 Mich 363, 370; 160 NW 623 (1916); *In re Marin,* 198 Mich App 560, 563; 499 NW2d 400 (1993). The court must look to the object of the statute and the harm it is designed to remedy and apply a reasonable construction that best accomplishes the statute's purpose. *Marquis v Hartford Accident & Indemnity (After Remand),* 444 Mich 638, 644; 513 NW2d 799 (1994).

Before the enactment of the PHC, the prohibition on kickbacks and fee division for patient referrals was defined to constitute unprofessional and dishonest conduct. See § 11(2)(f) of the MPA, 1973 PA 185, MCL 338.1811(2)(f); MSA 14.542(11)(2)(f), repealed by 1978 PA 368, MCL 333.25101; MSA 14.15(25101). However, with the enactment of the PHC, the prohibition on kickbacks and fee division for patient referrals is now defined to constitute unethical business practices. See MCL 333.16221(d)(ii); MSA 14.15(16221)(d)(ii). The prohibition on "directing or requiring" patients or patient specimens to a facility in which a physician has a financial interest is defined to constitute unprofessional conduct. See MCL 333.16221(e)(iv); MSA 14.15(16221)(e)(iv). Thus, the Legislature views the object of the "directing or requiring" prohibition of § 16221(e)(iv) distinct from the object of the kickback prohibition of § 16221(d)(ii).

We find persuasive the statement in OAG No 5498, *supra* at 188, that the harm § 16221(e)(iv) is

designed to attack is the problem of overutilization of health services. *Ludington & N R Co, supra* at 40. This finding is bolstered by a statement in the legislative analysis of 1985 SB 56, enacted as 1986 PA 319, indicating that the "directing or requiring" prohibition of § 16221(e)(iv) is "presumably" aimed at "overutilization of medical services." See Senate Legislative Analysis, SB 56, February 4, 1987; House Legislative Analysis, SB 56, December 2, 1986; Senate Legislative Analysis, SB 56, May 29, 1986; see also House Legislative Analysis, HB 4867, November 12, 1981.

Accordingly, in light of the distinct object of § 16221(e)(iv) and the harm it is designed to remedy, as well as the statute's plain language and legislative analyses previously discussed, we believe that a construction of § 16221(e)(iv) that limited "directing" to a physician's mandate, command, or order simply because § 16221(d)(ii) uses the term "referral" would unreasonably confuse style over substance and clarity. Thus, in returning to the plain language of the statute we conclude that "directing" means guiding, managing, regulating, or controlling by advice, instructions, orders, or commands, and does not exclude "referring." The emphasis is on the steps necessary to accomplish a purpose. *Random House Webster's College Dictionary* (1995), "Direct," p 381.

Petitioners argue that they did not direct or require within § 16221(e)(iv) where they posted a notice giving their patients the option to choose another qualified facility. The board argues that petitioners cannot avoid the clear meaning of § 16221(e)(iv) simply by posting a sign. As indicated previously, OAG No 5498, *supra,* did not address this issue. However, we find the factual situation addressed in OAG No 5498 helpful.

In OAG No 5498, the Attorney General was

asked whether a violation of the "directing or requiring" prohibition of § 16221(e) was established "upon proof that a physician collected a specimen from a patient and sent it for analysis to a laboratory in which the physician has a financial interest." The Attorney General stated:

> This is perhaps the most extreme example of a physician "requiring" an individual to obtain a service from a facility in which the physician has a financial interest. The physician leaves nothing to chance. The physician personally sees to it that the specimen is taken and that it is sent to the laboratory in which the physician has a financial interest as opposed to any other laboratory.
>
> It is my opinion that a violation of section 16221(e)[iv] of the Public Health Code occurs where the licensed health professional arranges to have a specimen sent to a clinical laboratory in which he or she has a financial interest, whether or not there is consultation with the patient. [OAG No 5498, *supra* at 190.]

In this case, unlike OAG No 5498, petitioners through their notice leave something to chance by giving their patients, upon request, a choice regarding what facility to use. Nevertheless, we believe that petitioners are "directing or requiring" in violation of the plain language of § 16221(e)(iv) when they refer to a facility in which they have a financial interest patients who either "choose to use" their facility or "who have not chosen to use another facility." Such referrals undermine the statutory purpose of preventing physicians from "directing or requiring" their patients or patient specimens to facilities in which petitioners have a financial interest.

Petitioners argue that the board's interpretation has bad policy implications, particularly in light of the lack of safe harbors in the legislation. How-

ever, the fact that a statute appears impolitic or unwise is not sufficient for judicial construction but is a matter for the Legislature. *Lansing v Lansing Twp,* 356 Mich 641, 648; 97 NW2d 804 (1959).

The board's interpretation of "directing or requiring," while not longstanding, does not overcome the statute's plain meaning and is supported by the cogent reason of preventing overutilization of health services. Thus, the board's interpretation is entitled to some deference. *Ludington Service, supra* at 505; *Wozniak v General Motors Corp (After Remand),* 212 Mich App 40, 44; 536 NW2d 841 (1995). We conclude that the board's ruling that under the circumstances of this case petitioners were "directing or requiring" in violation of § 16221(e)(iv) was not an abuse of discretion or affected by a substantial and material error of law. The trial court erred in determining otherwise.

Nor, under the facts of this case, did the board's interpretation of "directing or requiring" render those terms unconstitutionally vague. *Warnshuis v State Bd of Registration in Medicine,* 285 Mich 699, 703-704; 281 NW 410 (1938); *West Bloomfield Charter Twp v Karchon,* 209 Mich App 43, 48-49; 530 NW2d 99 (1995). As indicated previously, the ordinary and accepted meaning of the terms "directing or requiring" is easily ascertained. *Michigan State AFL-CIO v Civil Service Comm (After Remand),* 208 Mich App 479, 492; 528 NW2d 811 (1995). Thus, the terms "directing or requiring" neither fail to provide those reading the statute with fair notice of the prohibited conduct nor confer upon the board unfettered discretion to determine whether a violation has occurred. *Id.* As also indicated previously, the board applied the terms "directing or requiring" according to their ordinary and accepted meanings. The board's deci-

sion was supported by competent, material, and substantial evidence. *Ludington Service, supra* at 490. A statute is not unconstitutional merely because it is undesirable, unfair, unjust, or inhumane. *Doe v Dep't of Social Services,* 439 Mich 650, 681; 487 NW2d 166 (1992). Thus, the board's interpretation of the terms "directing or requiring" did not render those terms unconstitutionally vague. The trial court erred in determining otherwise.

Accordingly, we reverse the circuit court's order and reinstate the board's declaratory ruling.