*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF MALREY BEETRIS COLLIER.

---

BARBARA ANN AHRENS,

Appellant,

v

GREGORY H. BRINGARD, Personal
Representative of the ESTATE OF MALREY
BEETRIS COLLIER, and the ESTATE OF
ROBERT E. COLLIER, JR., by CATHY
COLLIER, Personal Representative,

Appellees.

UNPUBLISHED
February 11, 2020

No.  347621
Tuscola Probate Court
LC No.  17-035661-DA

---

Before:  MURRAY, C.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

Appellant, Barbara Ann Ahrens ("Ahrens"), appeals the probate court's denial of her motion for partial summary disposition and decision to grant partial summary disposition in favor of appellee Cathy Collier ("Cathy"), as personal representative of Robert Collier's estate pursuant to MCR 2.116(I)(2).  We affirm.

## I. FACTS

Ahrens is the daughter of decedent and the sister of the original personal representative of decedent's estate, Robert Collier, Jr. ("Robert").  Decedent died on January 9, 2017.  An application for informal probate and appointment of Robert as personal representative was filed on February 17, 2017.  Decedent's final will, which was executed on March 21, 2011, was admitted to probate.  In relevant part, the will bequeathed $1.00 to Ahrens, and the residue of decedent's estate was bequeathed to Robert.

-1-

Ahrens filed a petition objecting to the admission of the will into probate; subsequently, she filed an amended petition alleging four counts: (I) "lack of testamentary capacity to make a will/insane delusions," (II) "creation of an oral trust," (III) "creation of codicil to will," and (IV) "revocatory act on will." Robert died during the pendency of the probate proceedings, and appellee Gregory Bringard was substituted as the personal representative of decedent's estate. Subsequently, Cathy, as personal representative of Robert's estate, was permitted to intervene in the proceeding.

Ahrens filed a motion for summary disposition pursuant to MCR 2.116(C)(10) as to Counts II and III of the amended petition. First, Ahrens argued that decedent created an oral trust when she made certain sworn statements during a 2016 conservatorship hearing. Second, Ahrens argued that the transcript of the conservatorship hearing was a document that could be admitted to probate as decedent's last will. Cathy opposed the motion and argued that summary disposition in her favor was proper.

The statements at issue were made by decedent at a conservatorship hearing that was held on December 28, 2016. Robert sought to become decedent's conservator, and Ahrens sought to become co-conservator. Robert testified that he had documents submitted by two separate doctors stating that decedent exhibited early signs of dementia and Alzheimer's disease. Decedent also testified before the court. The probate court made several inquiries during the hearing. The following relevant inquiry transpired:

> *The Court*: So now it's time for them to help and make choices for you, true?
>
> *Decedent*: Yeah.
>
> *The Court*: Okay.
>
> *Decedent*: Yeah. But, I think he should pick the phone up and call his sister, talk to her, tell her, you know, like what he just found and how mom liked it. I think they—'cause sometimes when your children get a heart in there, there's a little—like you say, a little money put away, you have to watch. Your children kind of part, you know.

The probate court then asked, "Don't you think children have a normal fear that they may not be mom's favorite?" Decedent responded:

> I don't know. There's something built in there somewhere. But I think mine can do this the way it should be. *And when I'm gone, I would like for them to have equal parts from my inheritance*, if there's anything left. I may be fortunate enough to use up this last two little bits I've got. [Emphasis added.]

On cross-examination, Ahrens asked decedent whether she would have a problem with her and Robert serving as co-conservators. Decedent answered: "[I]f it's her thinking she's not going to get as much money as he gets, tell her don't worry about that. It will come out that she gets her even share."

After the 2016 hearing, the probate court determined that decedent was mentally competent but that decedent desired a conservator because "her age and her physical infirmity" rendered her "unable to manage her property." Robert was appointed as decedent's conservator.

Following oral argument on Ahrens's motion for summary disposition and Cathy's cross-motion for summary disposition in the will-contest proceeding, the probate court denied Ahrens's motion for summary disposition. The probate court determined that no oral trust had been created during the 2016 conservatorship hearing. Regarding whether a will was created by the resulting transcript, the probate court concluded that decedent's oral statements could not operate as a will despite the fact that the proceeding had been transcribed. Cathy filed a motion for reconsideration of the probate court's decision, arguing that the probate court had failed to rule on her motion for summary disposition. The probate court granted Cathy's motion for reconsideration and held that summary disposition on Counts II and III of the amended petition in favor of Cathy was proper pursuant to MCR 2.116(I)(2).

On January 23, 2019, the probate court entered a stipulated order for dismissal of Counts I and IV of Ahrens's amended petition.[1] The stipulated order reflected that it was a final order and that the distribution of decedent's estate was stayed pending appeal. This appeal followed.

## II. ANALYSIS

"[T]his Court reviews de novo a probate court's decision on a motion for summary disposition." *In re Casey Estate*, 306 Mich App 252, 256; 856 NW2d 556 (2014). In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), this Court considers "affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, in the light most favorable to the party opposing the motion." *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999) (citation omitted). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Id*. at 454-455. "A court may grant summary disposition to the opposing party under MCR 2.116(I)(2) if it determines that the opposing party, rather than the moving party, is entitled to judgment." *Ashley Capital, LLC v Dep't of Treasury*, 314 Mich App 1, 6; 884 NW2d 848 (2015) (quotation marks and citation omitted).

In addition, this Court reviews de novo issues of statutory interpretation. *Casey*, 306 Mich App at 256.

## A. CREATION OF ORAL TRUST

Ahrens argues that the probate court erred by finding that a material question of fact did not exist as to whether decedent indicated an intention to create a trust. We disagree.

---

[1] Ahrens is not appealing the probate court's decision to dismiss Counts I and IV of the amended petition. Rather, the issues on appeal focus solely on the probate court's dismissal of Counts II and III.

"In determining whether a parol trust exists, the facts of the case must be examined in the light of general principles of the law relating to trusts." *Osius v Dingell*, 375 Mich 605, 613; 134 NW2d 657 (1965). MCL 700.7402(1), which address the creation of trusts, provides:

> (1) A trust is created only if all of the following apply:
>
> > (a) The settlor has capacity to create a trust.
>
> > (b) The settlor indicates an intention to create the trust.
>
> > (c) The trust has a definite beneficiary or is either of the following:
>
> > > (*i*) A charitable trust.
>
> > > (*ii*) A trust for a noncharitable purpose or for the care of an animal, as provided in section 2722.
>
> > (d) The trustee has duties to perform.
>
> > (e) The same person is not the sole trustee and sole beneficiary.

"It is a general principle of trust law that a trust is created only if the settlor manifests an intention to create a trust, and it is essential that there be an explicit declaration of trust accompanied by a transfer of property to one for the benefit of another." *Estate of Lewis v Rosebrook*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 343765); slip op at 11 (quotation marks and citation omitted). Precatory words, or words expressing a wish, create uncertainty in discerning intent because they are regarded as words "used by way of suggestion, rather than as words of command or direction." *Gilchrist v Corliss*, 155 Mich 126, 129; 118 NW 938 (1908). Our Supreme Court has defined "precatory" language as referring to expressions such as "I wish," "I want," or "I would like." See *Crisp v Anderson*, 204 Mich 35, 39; 169 NW 855 (1918). "To establish a trust of personalty, parol evidence must be clear and satisfactory and find some support in the surrounding circumstances and conduct of the parties." *Osius*, 375 Mich at 613.

In support of her argument that decedent intended to create a trust, Ahrens notes that decedent stated the following during the 2016 proceedings: "And when I'm gone, I would like for them to have equal parts from my inheritance, if there's anything left." In response to a follow-up question from Ahrens, decedent then stated, "if it's her thinking she's not going to get as much money as he gets, tell her don't worry about that. It will come out that she gets her even share."

We conclude that decedent's statements were precatory and unclear, and that they did not convey the intent necessary to create a trust. Specifically, in both the first and second statement, decedent failed to identify to whom she was referring when she used the words "them," "he," and "she." Decedent indicated that she would "like" for "them" to have "equal parts" "if" there was "anything left" at the time of her death. Decedent then noted that she "may" be "fortunate enough to use up" the remainder of her assets before she died, thereby indicating that the receipt of funds would be contingent upon how long decedent lived and how much money she spent during the remainder of her life. Thus, the statements appear to reflect decedent's understanding of how a

-4-

will operates and essentially amount to casual remarks concerning the disbursement of property, as opposed to "an explicit declaration of trust accompanied by a transfer of property to one for the benefit of another." See *Lewis* at 11.

Furthermore, considering the context in which the statements were made, we conclude that decedent did not intend to create a trust. Her statements were made in response to questions during the conservatorship hearing, the purpose of which was to determine whether decedent required a conservator to handle her finances. Moreover, the questions asked did not concern how decedent wanted to dispose of her estate and decedent did not clearly direct how she wanted her property disposed of during the 2016 proceeding. In contrast, decedent clearly dictated in her final will that Ahrens only receive one dollar from decedent's estate. Although the probate court concluded that decedent was mentally competent during the hearing, Robert testified that she displayed early signs of dementia and Alzheimer's disease. Decedent's medical diagnosis, which formed the basis for decedent needing a conservator given her ailing health, raises further doubt as to decedent's intention.

Given the circumstances and the unclear, precatory language used by decedent, we conclude that the probate court did not err by determining that a genuine issue of material fact did not exist as to whether decedent intended to create an oral trust. Because we conclude that an oral trust was not created, we find it unnecessary to address any additional arguments raised by the parties regarding this issue.

## B. CREATION OF A NEW WILL

Ahrens next argues that the probate court erred by finding that there was not a genuine issue of material fact as to whether decedent intended for the transcript of the conservatorship hearing to serve as her final will. We disagree.

MCL 700.2502, which addresses the requirements of a valid will, states:

> (1) Except as provided in subsection (2) and in sections 2503, 2506, and 2513, a will is valid only if it is all of the following:
>
> (a) In writing.
>
> (b) Signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction.
>
> (c) Signed by at least 2 individuals, each of whom signed within a reasonable time after he or she witnessed either the signing of the will as described in subdivision (b) or the testator's acknowledgment of that signature or acknowledgment of the will.
>
> (2) A will that does not comply with subsection (1) is valid as a holographic will, whether or not witnessed, if it is dated, and if the testator's signature and the document's material portions are in the testator's handwriting.

(3) Intent that the document constitutes a testator's will can be established by extrinsic evidence, including, for a holographic will, portions of the document that are not in the testator's handwriting.

However, "[t]he plain language of MCL 700.2503 establishes that it permits the probate of a will that does not meet the requirements of MCL 700.2502." *In re Estate of Attia*, 317 Mich App 705, 711; 895 NW2d 564 (2016). MCL 700.2503, which allows a will to be admitted to probate despite not complying with MCL 700.2502, states:

Although a document or writing added upon a document was not executed in compliance with section 2502, the document or writing is treated as if it had been executed in compliance with that section if the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute any of the following:

(a) The decedent's will.

(b) A partial or complete revocation of the decedent's will.

(c) An addition to or an alteration of the decedent's will.

(d) A partial or complete revival of the decedent's formerly revoked will or of a formerly revoked portion of the decedent's will.

An unsigned will may be admitted to probate under MCL 700.7203. *Attia*, 317 Mich App at 711. In *Attia*, we stated:

[A] will does not need to be signed in order to be admitted to probate under MCL 700.2503, as long as the proponent of the document in question establishes by clear and convincing evidence that the decedent intended the document to be a will. To hold otherwise would render MCL 700.2503 inapplicable to the testamentary formalities in MCL 700.2502, which is contrary to the plain language of the statute. Therefore, MCL 700.2503 permits the admission of a will to probate that does not meet the signature requirement in MCL 700.2502(1)(b), as long as the proponent establishes by clear and convincing evidence that the decedent intended the document to be a will. [*Id*.]

We further construed MCL 700.2503 in our recent decision in *In re Estate of Horton*, 325 Mich App 325; 925 NW2d 207 (2018). In *Horton*, we concluded that the decedent intended to bequeath his property through an unsigned electronic note even though no portion of the document was drafted in his handwriting. *Id*. at 327. The electronic note contained, among other things, a full paragraph regarding how his property should be distributed, and it was referenced in a handwritten journal entry, which stated, "My final note, my farewell is on my phone." *Id*. We concluded that the electronically created note constituted the final will of the decedent under MCL 700.2403. *Id*. at 333-334. In reaching that conclusion, we stated:

A will need not be written in a particular form or use any particular words; for example, a letter or other document, such as a deed, can constitute a will.

However, in order for a document to be considered a will it must evince testamentary intent, meaning that it must operate to transfer property only upon and by reason of the death of the maker. Moreover, the document must be final in nature; that is, mere drafts or a mere unexecuted intention to leave by will is of no effect. Ultimately, in deciding whether a person intends a document to constitute a will, the question is whether the person intended the document to govern the posthumous distribution of his or her property. [*Id*. (quotation marks, citations, and alterations omitted).]

Thus, we concluded in *Horton* that the probate court did not err by determining that the decedent intended the electronic note to be his final will. *Id*. at 337-338. The probate court had considered extensive extrinsic evidence relating to the circumstances surrounding the decedent's death and found that the language of the note "clearly and unambiguously expressed his testamentary intent in the electronic document in anticipation of his impending death . . . ." *Id*. at 335.

Ahrens argues on appeal that this case is similar to *Horton* because, like the electronic note, decedent intended her statements made at the conservatorship hearing to be her will. However, *Horton* is readily distinguishable. First, in this case, decedent did not provide any express or explicit indication that the statements she made at the hearing or the resulting transcript would serve as her final will; in fact, she never stated a desire that her statements be distilled to writing. Furthermore, her statements lack any indication of finality in that they do not specifically identify her property or how she would like it distributed after her death. Instead, her statements appear only to express her wishes in the moment. In contrast, the decedent in *Horton* specifically referenced the electronic note in his handwritten journal entry, identified it as "his final note," and very "clearly dictate[d] the distribution of [the] property after his death." *Id*. at 327.

Additionally, in *Horton*, the probate court found that the decedent used clear and unambiguous language to express his testamentary intent, listing specific items and the person he intended to receive them, as well as explicitly stating that his mother should not receive any money from his estate. *Horton*, 325 Mich App at 335, 337-338. However, in this case, in response to the probate judge asking a question about whether she felt she needed a conservator, decedent spontaneously announced that she "would like for [her children] to have equal parts from [her] inheritance." Moreover, as discussed above in the context of trust formation, the circumstances surrounding decedent's statements negate the presence of a clear testamentary intent. Although decedent made the statements under oath and in consideration of her own mortality, her statements were prompted by the questions of the probate court and Ahrens at a conservatorship hearing. Furthermore, although decedent died 12 days after making the statements, there is no indication that she knew her death was imminent at the time she made them. Cf. *Horton*, 325 Mich App at 37 (noting that the decedent memorialized his estate plan in a suicide note in anticipation of his "imminent death"). Therefore, given the circumstances surrounding decedent's statements and her lack of clear language expressing intent, the probate court did not err by determining that a genuine issue of material fact did not exist as to whether decedent intended for the transcript to serve as her final will. Consequently, we need not address any other arguments addressing this issue.

In sum, because the probate court did not err when it granted summary disposition in favor of Cathy, see *Casey*, 306 Mich App at 262-264, the court did not abuse its discretion when granting Cathy's motion for reconsideration, see *Woods v SLB Property Management*, 277 Mich App 622, 629-630; 750 NW2d 228 (2008).

Affirmed.


/s/ Christopher M. Murray
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron