# STATE OF MICHIGAN

# COURT OF APPEALS

ASHLEY CAPITAL, LLC,

Plaintiff-Appellee,

UNPUBLISHED
November 10, 2015

v

DEPARTMENT OF TREASURY,

Defendant-Appellant.

No. 322386
Court of Claims
LC No. 12-000132-MT

Before: GADOLA, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, Ashley Capital, LLC, filed an action in the Court of Claims, asserting that defendant, Department of Treasury (treasury department), improperly calculated the tax owed by Ashley Capital under the former Michigan Business Tax Act (BTA), MCL 208.1101, *et seq.*, for the tax years 2008, 2009, and 2011.[1] Ashley Capital specifically contested the order in which the treasury department applied certain carryforward credits from the Single Business Tax Act (SBTA), MCL 208.1 *et seq.*, when calculating its BTA liability.[2] The treasury department appeals as of right from an opinion and order denying its motion for summary disposition brought under MCR 2.116(C)(8) and granting judgment in favor of Ashley Capital under MCR 2.116(I)(2). Because the Court of Claims correctly determined the order in which the credits available to Ashley Capital under the BTA should be applied, we affirm.

This case involves the order in which credits should be applied against tax liability under the BTA. In particular, there are four types of credits at issue. They are: (1) the "unused carryforward credit" described in § 401 of the BTA; (2) the "brownfield rehabilitation credit" referred to in § 437 of the BTA; (3) the "compensation credit" set forth in § 403(2) of the BTA; and (4) the "investment tax credit" provided for by § 403(3) of the BTA. Two of these credits—

---

[1] The MBTA was repealed by 2011 PA 39, and replaced with the Corporate Income Tax Act, MCL 206.601 *et seq.* See *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 650 & n 23; 852 NW2d 865 (2014).

[2] The SBTA (1975 PA 228; MCL 208.1 to 208.145) was repealed by 2006 PA 325, effective December 31, 2007, and replaced by the now former MBTA, effective January 1, 2008.

the unused carryforward credit and brownfield rehabilitation credit—were available under the SBTA and they were carried forward into the BTA. The other credits—the compensation credit and the investment tax credit—were created by the BTA. Regarding the ordering of credits under the BTA, MCL 208.1403(1) provides that: "Notwithstanding any other provision in this act, the credits provided in this section [i.e., the compensation credit and investment tax credits] shall be taken *before any other credit under this act*."

Although the language of MCL 208.1403(1) indicates that the compensation credit and investment tax credits must be taken "before any other credit under this act," the treasury department crafted a form which required taxpayers to take carryforward credits and brownfield rehabilitation credits before taking compensation credits and investment credits. In this case, however, when Ashley Capital filed its returns, it did not follow the ordering of the form and it claimed its compensation credits and carryforward credits first. The treasury department then issued a BTA annual return notice of refund adjustment for the 2008 tax year, reducing Ashley Capital's requested refund. Ashley Capitol challenged the adjustment, and an informal conference was held with the treasury department's hearing referee. The hearing referee issued a recommendation that Ashley Capital receive a refund, but the treasury department issued a decision and order of determination overruling the hearing referee.

Adding claims for the 2009 and 2011 tax years, Ashley Capital appealed the decision to the Court of Claims, which reversed the treasury department's decision. The Court of Claims concluded that MCL 208.1403(1) evinced a legislative intent to "create a 'super' priority for Compensation Credits and Investment Tax Credits." Thus, the Court of Claims reasoned that the compensation credits and investment tax credits must be taken first, before all credits that originated under the BTA as well as those credits that were created by the SBTA and carried forward by the BTA. Because Ashley Capital ordered the credits in this manner, the Court of Claims determined that Ashley Capital was entitled to summary disposition under MCR 2.116(I)(2). The treasury department now appeals to this Court as of right.

The issue before this Court on appeal is one of statutory interpretation. That is, both parties contest the interpretation of MCL 208.1403(1) and the ordering of credits under this provision. The parties both recognize that compensation credits and investment tax credits must be taken before other credits under the BTA, but they disagree with regard to what constitutes a "credit under [the BTA]." Specifically, the treasury department argues that credits under the BTA consist only of credits created by the BTA, meaning that the phrase does not include the brownfield rehabilitation credits and the carryforward credits that originated under the SBTA. In contrast, Ashley Capital argues that the brownfield rehabilitation credits and carryforward credits are credits provided for under the BTA and thus, under the plain language of MCL 208.1403(1), the compensation credits and investment tax credits must be taken before the brownfield rehabilitation and carryforward credits.

We review de novo a trial court's decision on a motion for summary disposition. *Jimkoski v Shupe*, 282 Mich App 1, 4; 763 NW2d 1 (2008). "A court may grant summary disposition to the opposing party under MCR 2.116(I)(2) if it determines that the opposing party, rather than the moving party, is entitled to judgment." *Jaguar Trading Ltd Partnership v Presler*, 289 Mich App 319, 322; 808 NW2d 495 (2010). We review de novo an issue of

statutory construction, which is a question of law. *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 537; 831 NW2d 255 (2013).

"When interpreting statutory language, our obligation is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). To this end, we "must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory." *Id.* Statutory words must be read in context, and undefined terms are given their plain and ordinary meaning. *Midamerican Energy Co v Dep't of Treasury*, 308 Mich App 362, 370; 863 NW2d 387 (2014). "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Ford Motor Co v Treasury Dep't*, 496 Mich 382, 389; 852 NW2d 786 (2014) (quotation marks and citation omitted). "A provision of law is ambiguous only if it 'irreconcilably conflict[s]' with another provision or 'when it is *equally* susceptible to more than a single meaning.'" *In re Application of Indiana Mich Power Co for a Certificate of Necessity*, 869 NW2d 276, 277; __ NW2d __ (2015), quoting *Koontz*, 446 Mich at 318. "When there is an ambiguity, tax laws are generally construed in favor of the taxpayer, *Lear Corp*, 299 Mich App at 537, but "tax statutes that grant tax credits or exemptions are to be narrowly construed in favor of the taxing authority because such statutes reduce the amount of tax imposed," *Alliance Obstetrics & Gynecology v Dep't of Treasury*, 285 Mich App 284, 286; 776 NW2d 160 (2009). However, "[w]hile tax-exemption statutes are strictly construed in favor of the government, they are to be interpreted according to ordinary rules of statutory construction." *Inter Co-op Council v Tax Tribunal Dept of Treasury*, 257 Mich App 219, 223; 668 NW2d 181 (2003). We note as well that an administrative agency's "interpretation is entitled to respectful consideration and, if persuasive, should not be overruled without cogent reasons." *Younkin v Zimmer*, 497 Mich 7, 10; 857 NW2d 244 (2014) (citation omitted).

In this case, the statute at issue is MCL 208.1403(1), which provides in full:

> Notwithstanding any other provision in this act, *the credits provided in this section shall be taken before any other credit under this act*. Except as otherwise provided in [MCL 208.403(6)], for the 2008 tax year, the total combined credit allowed under this section shall not exceed 50% of the tax liability imposed under this act before the imposition and levy of the surcharge under section 281. For the 2009 tax year and each tax year after 2009, the total combined credit allowed under this section shall not exceed 52% of the tax liability imposed under this act before the imposition and levy of the surcharge under section 281. [Emphasis added.]

Considering the plain language of the statute, we conclude that the Court of Claims correctly recognized that MCL 208.1403(1) placed the compensation credits and investment credits in a "'super' priority" position relative to all other credits a taxpayer might claim under the BTA. That is, it is unmistakable that the credits described in MCL 208.1403(1), i.e., compensation credits and investment credits, must be taken *before* "any other credit under this act." Further, in our judgment it is equally clear that "any other credit under this act" refers to any credit described in a section of the BTA other than MCL 208.1403. The term "this act" obviously denotes the BTA. See MCL 208.1101(1). And, for a credit to be "under" the BTA, it

must be "within the group or designation of" the BTA or "subject to the authority, control, guidance, or instruction of" the BTA. See *Merriam-Webster's Collegiate Dictionary* (2014) (defining the word "under"). Given this ordinary understanding of what it means to be "under" the BTA, we agree with the Court of Claims conclusion that the brownfield rehabilitation credits and carryforward credits constitute other credits under the BTA. The BTA expressly provides for the carryforward credits under MCL 208.1401 and for brownfield rehabilitation credits under MCL 208.1437. Both MCL 208.1401 and MCL 208.1437 are contained within the BTA and more specifically within the chapter entitled "credits," meaning that, quite simply, these are credits "under" the BTA. As such, it is clear that these credits are also subject to the ordering provision found in MCL 208.1403(1) because they are included in the phrase "any other credit[s] under [the BTA]." Consequently, Ashely Capital correctly ordered its credits when it claimed the compensation credits and investment credits before the brownfield rehabilitation credits and carryforward credits. See MCL 208.1403(1).

In contrast to this conclusion, the treasury department maintains that only credits created by the BTA are a "credit under this act." However, this interpretation impermissibly reads additional language into the statute, which we will not do. See *Book-Gilbert v Greenleaf*, 302 Mich App 538, 542; 840 NW2d 743 (2013). Had the Legislature only intended to place the compensation credits and investment credits before those credits *created by* the BTA, it would have so specified. Instead, it chose the phrase "under this act," which clearly encompasses all credits provided for under the BTA, including the brownfield rehabilitation credits and carryforward credits. Indeed, although it is true that these credits originated under the SBTA, the SBTA has been repealed. See *Int'l Bus Machines Corp*, 496 Mich at 649 & n 21, citing 2006 PA 325. Consequently, while the credits in question might have originated under the SBTA, as of January 1, 2008, the SBTA no longer existed and these credits were then governed solely by the BTA. In these circumstances, these credits exist "under" the BTA such that they are covered by the ordering provision of MCL 208.1403(1).

In a different formulation of essentially the same argument, the treasury department also argues that the Legislature intended a textual distinction between a "carryforward" from the SBTA and a "credit" under the BTA such that credits carried forward from the SBTA cannot be considered a "credit" for purposes of the BTA.[3] This argument from the treasury department draws a distinction without a difference. Under the BTA, the carryforward credits, brownfield rehabilitation credits, investment credits, and compensation credits are all available to offset taxpayer liability under the BTA. The mere fact that some credits were carried forward by the Legislature from the SBTA does not obviate the clear fact that such carryforwards are nonetheless credits which, like other credits, may be used under the BTA to offset liability arising under the BTA. Indeed, MCL 208.1403(1) refers broadly to "*any* other credit under this

---

[3] For example, regarding carryforward credits, MCL 208.1401 states that "[e]xcept as otherwise provided under this act, any *unused carryforward for any credit* under former 1975 PA 228 may be applied for the 2008 and 2009 tax years and any unused carryforward after 2009 shall be extinguished." The treasury department asserts that given this phrasing there is a distinction between a "credit" and an "unused carryforward for any credit."

act," and it makes no distinction between those credits carried forward from the SBTA and those originating under the BTA. We decline to read such language into the statute. See *Book-Gilbert*, 302 Mich App at 542. Because the brownfield rehabilitation credits and carryforward credits may be used under the BTA to offset liability arising from the BTA, they plainly constitute "credits" under the BTA.

Finally, the treasury department asserts that its interpretation of MCL 208.1403(1) should prevail because the treasury department was delegated the discretionary authority to administer the BTA, including the authority to prescribe forms for use in effectuating the BTA. In these circumstances, the treasury department maintains that its interpretation is entitled to respectful consideration and its forms delineating the ordering of credits should be subjected to a rational basis review.

It is clear that the treasury department has authority to administer the tax imposed by the BTA, MCL 208.1513(1), to "prescribe forms for use by taxpayers," MCL 208.1513(3), and to "promulgate rules in conformity with" the BTA, MCL 208.1513(3). Moreover, "[a]gencies have the authority to interpret the statutes they are bound to administer and enforce." *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 46; 703 NW2d 822 (2005). However, the Administrative Procedures Act (APA), MCL 24.201, *et seq.*, provides that an administrative agency's "form with instructions, an interpretive statement, a guideline, and informational pamphlet . . . [is not a promulgated rule and] does not have the force and effect of law but is merely explanatory." MCL 24.207(h). Further, although the treasury department has authority to prescribe forms under the BTA, its designation in those forms of the order in which credits should be taken is not subject to rational-basis review because the Legislature expressly set the order of credits in the BTA and did not grant such discretion to the treasury department. See MCL 208.1403(1). Cf. *Guardian Indus Corp v Dep't of Treasury*, 198 Mich App 363; 499 NW2d 349 (1993) (holding that where the statute granted the commissioner of revenue discretion to require a taxpayer to consolidate tax returns, rational-basis review of decision to not apply decision retroactively was appropriate). Ultimately, while the treasury department's interpretation of the BTA is entitled to respectful consideration, it is simply not persuasive because it does not comport with the plain language of the statute. See *Younkin*, 497 Mich at 10; *Kmart Mich Prop Servs, LLC v Dep't of Treasury*, 283 Mich App 647, 651; 770 NW2d 915 (2009). Consequently, because there are cogent reasons why the treasury department's interpretation should not be upheld, the Court of Claims properly applied the plain language of the statute and granted summary disposition to Ashley Capital.

Affirmed.

/s/ Michael F. Gadola
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly