# STATE OF MICHIGAN

# COURT OF APPEALS

HUDSONVILLE CREAMERY AND ICE
CREAM COMPANY, L.L.C.,

Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

Respondent-Appellee.

FOR PUBLICATION
March 29, 2016
9:05 a.m.

No. 322968
Tax Tribunal
LC No. 00-450134

Before: METER, P.J., and BORRELLO and BECKERING, JJ.

BECKERING, J.

Petitioner, Hudsonville Creamery & Ice Cream Company, LLC, appeals as of right the decision of the Michigan Tax Tribunal (MTT) granting summary disposition to respondent, Department of Treasury, and denying petitioner's motion for the same. At issue in this case is whether certain brownfield tax credits issued to petitioner under the former Michigan Single Business Tax Act (SBTA) are eligible for a refund under MCL 208.1437(18) of the now-repealed Michigan Business Tax Act (MBTA). Because the common understanding of the term "credit," as it is used in MCL 208.1437(18) encompasses a carryforward, and because the statute at issue permits an 85% refund for credits, without limitation, we hold that petitioner was entitled to a refund of 85% of its brownfield credits in the 2008 tax year. Accordingly, we reverse and remand.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2005, petitioner invested over $8 million in an approved brownfield redevelopment project under MCL 208.38g(2). Respondent issued petitioner a certificate of completion indicating that petitioner, a "qualified taxpayer" under the SBTA, was eligible to claim a

brownfield redevelopment credit under MCL 208.38g.  Accordingly, petitioner received $800,000[1] in brownfield redevelopment credits under the now-repealed SBTA.

Petitioner did not have any tax liability on its 2005, 2006, or 2007 SBTA returns, and as such, did not have any tax liability against which to apply its brownfield redevelopment credits. Having no SBTA tax liability for 2005-2007, petitioner carried forward its SBTA credits pursuant to former MCL 208.38g(15).[2]  Thereafter, the Legislature repealed the SBTA and implemented the MBTA for tax years beginning after December 31, 2007.  See 2006 PA 325.[3]

This case involves MCL 208.1437(18) of the MBTA.  As originally enacted, the statute permitted a qualified taxpayer to carry forward brownfield credits earned under the SBTA, but did not permit a refund of those credits.  However, the Legislature subsequently amended the act and allowed for a refund in certain situations.  MCL 208.1437(18) provides:

> Except as otherwise provided under this subsection, if the credit allowed under this section for the tax year and any unused carryforward of the credit allowed under this section exceed the qualified taxpayer's or assignee's tax liability for the tax year, that portion that exceeds the tax liability for the tax year shall not be refunded but may be carried forward to offset tax liability in subsequent tax years for 10 years or until used up, whichever occurs first.  Except as otherwise provided in this subsection, the maximum time allowed under the carryforward provisions under this subsection begins with the tax year in which the certificate of completion is issued to the qualified taxpayer.  If the qualified taxpayer assigns all or any portion of its credit approved under this section, the maximum time allowed under the carryforward provisions for an assignee begins to run with the tax year in which the assignment is made and the assignee first claims a credit, which shall be the same tax year.  The maximum time allowed under the carryforward provisions for an annual credit amount for a credit allowed under subsection (4) begins to run in the tax year for which the annual credit amount is designated on the certificate of completion issued under this section.  A credit carryforward available under section 38g of former 1975 PA 228 that is unused at the end of the last tax year may be claimed against the tax imposed under this act for the years the carryforward would have been available under former 1975 PA

---

[1] Of the $800,000, $562,685 was issued to Hudsonville Creamery & Ice Cream Company, LLC, and the remaining $237,315 was issued to Landmark Center, LLC.  Although the relationship between petitioner and Landmark LLC is unclear from the record, it appears undisputed that petitioner has standing to pursue litigation with regard to the total amount of credits.

[2] Although MCL 208.38g(15) allowed for unused credits to be carried forward, it did not permit a refund of those unused credits.

[3] In 2011 PA 39, the Legislature enacted legislation to repeal the MBTA and replaced the act with the Corporate Income Tax.  It appears disputed that if petitioner's refund claim is denied, any unused SBTA brownfield credit carryforwards will be lost for tax years beginning after 2011.

228. *Beginning on and after April 8, 2008, if the credit allowed under this section for the tax year exceeds the qualified taxpayer's tax liability for the tax year, the qualified taxpayer may elect to have the excess refunded at a rate equal to 85% of that portion of the credit that exceeds the tax liability of the qualified taxpayer for the tax year and forgo the remaining 15% of the credit and any carryforward.* [Emphasis added.[4]]

When petitioner filed its 2008 MBTA tax return, it claimed a credit of $71,306 against its MBTA liability and, pursuant to MCL 208.1437(18), elected a refund of 85% of its remaining SBTA credits. At the time, petitioner sought a refund of $619,390[5] on its 2008 MBTA tax return for its brownfield redevelopment credits.[6]

In December 2011, respondent informed petitioner that it was denying petitioner's request for a refund of $619,390 for the brownfield redevelopment credits earned under the SBTA. Respondent took the position that the credit was non-refundable and could only be carried forward. According to respondent, a qualified taxpayer could only elect a refund for the tax year in which a certificate of completion was received. On petition to the MTT, the MTT drew a distinction between credits and credit carryforwards under MCL 208.1437(18) and ruled that refunds are only available for credits, and not a carryforward of a credit earned under the SBTA, thereby denying the petition. The MTT granted respondent's motion for summary disposition and denied petitioner's motion for summary disposition. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

The critical issue in this case is whether a carryforward of a credit earned under the SBTA is refundable as a "credit" under MCL 208.1437(18) of the MBTA.

---

[4] The refund provision was added by 2008 PA 89, which contained the version of the statute that was in effect at the time petitioner filed its 2008 MBTA tax return. The Legislature has since made minor modifications to the statute in 2008 PA 578—adding the date of the amendatory act—and in 2009 PA 241—fixing an apparent typographical error. For ease of reference, and because the most recent version of the statute does not contain any substantive differences from the version that was in effect at the time petitioner filed its 2008 tax return, this opinion will refer to the most recent version of the statute, unless otherwise noted.

[5] This amount represents the total carryforward credit of $800,000, minus the claimed credit of $71,306, for a remaining carryforward credit of $728,694. Eighty-five percent of $728,694 is $619,390.

[6] Subsequently, and with the idea that its refund request might not be granted, petitioner made what it termed "protective elections" in the amount of $125,698 on its MBTA returns for the 2009-2011 tax years, seeking to use its SBTA credit carryforwards to offset its MBTA liability for those years.

"Where fraud is not claimed, we review the [MTT's] decision for misapplication of the law or adoption of a wrong principle." *Spartan Stores, Inc v Grand Rapids*, 307 Mich App 565, 568; 861 NW2d 347 (2014) (citation and quotation marks omitted). When statutory interpretation is involved, as it is in the instant case, our review is de novo. *Id.* See also *Briggs Tax Serv, LLC v Detroit Public Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010).

"The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Briggs Tax Serv*, 485 Mich at 76. The first step in such analysis is to examine the plain language of the statute at issue. *Id.* "When construing statutory language, [the court] must read the statute as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined." *Midamerican Energy Co v Dep't of Treasury*, 308 Mich App 362, 370; 863 NW2d 387 (2014) (citations and quotation marks omitted). In addition, this Court should avoid a construction that would render any part of the statute surplusage or nugatory. *Midamerican Energy Co*, 308 Mich App at 370. "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Id*. at 369-370.

## B.  MCL 208.1437(18)

At issue in this case is the interpretation of MCL 208.1437(18), which provides:

Except as otherwise provided under this subsection, if the credit allowed under this section for the tax year and any unused carryforward of the credit allowed under this section exceed the qualified taxpayer's or assignee's tax liability for the tax year, that portion that exceeds the tax liability for the tax year shall not be refunded but may be carried forward to offset tax liability in subsequent tax years for 10 years or until used up, whichever occurs first. Except as otherwise provided in this subsection, the maximum time allowed under the carryforward provisions under this subsection begins with the tax year in which the certificate of completion is issued to the qualified taxpayer. If the qualified taxpayer assigns all or any portion of its credit approved under this section, the maximum time allowed under the carryforward provisions for an assignee begins to run with the tax year in which the assignment is made and the assignee first claims a credit, which shall be the same tax year. The maximum time allowed under the carryforward provisions for an annual credit amount for a credit allowed under subsection (4) begins to run in the tax year for which the annual credit amount is designated on the certificate of completion issued under this section. A credit carryforward available under section 38g of former 1975 PA 228 that is unused at the end of the last tax year may be claimed against the tax imposed under this act for the years the carryforward would have been available under former 1975 PA 228. *Beginning on and after April 8, 2008, if the credit allowed under this section for the tax year exceeds the qualified taxpayer's tax liability for the tax year, the qualified taxpayer may elect to have the excess refunded at a rate equal to 85% of that portion of the credit that exceeds the tax liability of the qualified taxpayer for the tax year and forgo the remaining 15% of the credit and any carryforward.* [Emphasis added.]

The refund provision at issue appears in the last sentence of § 1437(18). That sentence provides that in the event "the credit allowed under this section for the tax year exceeds the qualified taxpayer's tax liability for the tax year," that qualified taxpayer "may elect to have the excess *refunded . . .*" at a rate of 85%, in exchange for forgoing the remaining percentage of the credit and any carryforward. The pertinent inquiry in determining whether a refund can be obtained is whether that which is sought to be refunded—comprised of a carryforward of credit that originated under the SBTA—qualifies as a "credit allowed under this section."

## C. WHAT CONSTITUTES A "CREDIT ALLOWED UNDER THIS SECTION"?

To determine what constitutes a "credit allowed under this section,"—and whether that includes a credit carryforward—the meaning of the words "credit" and "carryforward" are of critical importance. Neither word is defined by the MBTA. MCL 208.1103 provides that when a term is not defined in the MBTA, that term "shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly required." Turning to the internal revenue code, 26 USC 38 describes what constitutes a "general business credit"; business credits are at issue in this case. Notably, 26 USC 38(a) provides that:

> There shall be allowed as a credit against the tax imposed by this chapter for the taxable year an amount equal to the sum of--
>
> (1) *the business credit carryforwards carried to such taxable year,*
>
> (2) the amount of the current year business credit, plus
>
> (3) the business credit carrybacks carried to such taxable year. [Emphasis added.]

Thus, under the internal revenue code, it is apparent that a tax credit for a given tax year is designed to be a broad concept that includes certain, defined components. One of those components is unequivocally a credit carryforward. See 26 USC 38(a)(1). This understanding borrowed from the internal revenue code demonstrates that the "credit allowed under this section" under § 1437(18) includes credit that has been carried forward from a prior year to the taxable year. Consequently, the common and ordinary understanding of "credit" and "carryforward" supports the idea that a carryforward is considered a credit for a given tax year.

The idea that a credit—and thus, a "credit allowed under this act"—is an encompassing term that includes carryforwards of credits is buttressed by this Court's opinion in *Ashley Capital, LLC v Dep't of Treasury*, __ Mich App __; __ NW2d __ (2015) (Docket No. 322386), slip op at 1. That case, which admittedly did not involve the precise statutes at issue in this case, dealt with the order in which credits are to be applied under the MBTA. The respondent in that case—the Department of Treasury—argued that "credits" under the MBTA did "not include the brownfield rehabilitation credits and the *carryforward credits that originated under the SBTA.*" *Id*. at 2. (Emphasis added). In particular, the respondent argued that "the Legislature intended a textual distinction between a 'carryforward' from the SBTA and a 'credit' under the [M]BTA such that credits carried forward from the SBTA cannot be considered a 'credit' for purposes of the [M]BTA." *Id*. at 4. In other words, the respondent took a position very similar to the one it

takes on this appeal: a carryforward of a brownfield credit earned under the SBTA should not be considered a credit under the MBTA.

The panel in *Ashley Capital* rejected this argument, explaining:

> This argument from the treasury department draws a distinction without a difference. Under the [M]BTA, the carryforward credits, brownfield rehabilitation credits, investment credits, and compensation credits *are all available to offset taxpayer liability under the [M]BTA. The mere fact that some credits were carried forward by the Legislature from the SBTA does not obviate the clear fact that such carryforwards are nonetheless credits which, like other credits, may be used under the [M]BTA to offset liability arising under the [M]BTA.* Indeed, MCL 208.1403(1) refers broadly to "*any* other credit under this act," and it makes no distinction between those credits carried forward from the SBTA and those originating under the [M]BTA. We decline to read such language into the statute. [*Id*. at 4-5. (Emphasis added).]

Thus, the panel in *Ashley Capital* expressly rejected the idea that a "carryforward" should not be encompassed within the term "credit." Although the case at bar involves a different section of the MBTA, the decision in *Ashley Capital* is nevertheless instructive because it touches on the heart of the dispute in this case. That is, it weighs in on the issue of whether a credit, as the term is commonly understood in the MBTA, encompasses a carryforward of a credit earned under the SBTA.

In addition to the idea that a carryforward is a credit, it is apparent from the plain language of MCL 208.1437(18) that the particular carryforward at issue in this case qualifies as a "credit allowed under this section." The fifth sentence of § 1437(18) addresses the type of carryforward at issue in this case, providing that "[a] credit carryforward available under section 38g of former 1975 PA 228[7] that is unused at the end of the last tax year *may be claimed against the tax imposed under this act* for the years the carryforward would have been available under former 1975 PA 228." (Emphasis added). The key phrase in this sentence is that such a credit carryforward "*may be claimed against the tax imposed under this act*." That the credit carryforward may be claimed against the tax imposed under the act, i.e., may be subtracted from one's tax liability, makes it apparent that the particular carryforward at issue in this case is intended to function as a credit against liability imposed under the MBTA. In other words, a credit earned under the SBTA and subsequently carried forward and claimed against MBTA liability is, according to the plain language of § 1437(18), a "credit allowed under this section."

Furthermore, it is apparent from the plain language of the statute that the carryforward at issue was a "credit allowed under this section *for the tax year* . . . ." As noted, 26 USC 38(a)(1) describes a carryforward as a credit for purposes of "the taxable year . . . ." And, on the subject of what constitutes the "tax year," the MBTA defines "tax year" to mean "the calendar year, or

---

[7] This is a reference to MCL 208.38g of the former SBTA, under which the credits at issue in this case were earned.

-6-

the fiscal year ending during the calendar year, upon the basis of which the tax base of a taxpayer is computed under this act." MCL 208.1117(4). A carryforward of a credit is available for use in a given tax year, meaning that it can appropriately be considered in calculating tax liability in "the tax year." Hence, the fact that something is a credit carried forward from another tax year does not dispel the idea that it is nevertheless a credit "allowed under this section for the tax year." In this sense, we disagree with the dissent's conclusion that the phrase "for the tax year" is rendered nugatory if it is interpreted so as to include credits carried forward from other years.

### D. PETITIONER WAS ENTITLED TO THE CLAIMED REFUND

In light of the conclusion that the common and ordinary understanding of the term "credit" includes a carryforward of a credit from another year, and in light of the express language in § 1437(18) describing the credit carryforward at issue in this case as a credit under the pertinent section, we conclude that petitioner was entitled to the refund it claimed. The last sentence of MCL 208.1437(18) provides a refund for a "credit allowed under this section for the tax year" if such credit "exceeds the qualified taxpayer's liability for the tax year." Put simply, a "credit" allowed under the act encompasses a credit that has been carried forward to the taxable year. Further, there can be no dispute that the credit carryforward at issue in this case is considered a "credit allowed under" the appropriate section. Consequently, we hold that petitioner was correct in its election of an 85% refund of its SBTA credit carryforwards and that it was entitled to a refund under the last sentence of § 1437(18).

In concluding that petitioner is not entitled to a refund under § 1437(18), the dissent juxtaposes the first sentence of § 1437(18)—which expressly mentions carryforwards—and concludes that the Legislature did not intend for the type of credit carryforward claimed by petitioner in this case to be refunded. In this regard, the dissent notes that the first sentence of the statute refers to both credits and carryforwards: "if the *credit* allowed under this section for the tax year *and any unused carryforward* of the credit allowed under this section exceed the qualified taxpayer's or assignee's tax liability for the tax year . . . ." In contrast, the sixth sentence—the sentence providing a refund option—refers only to "*the credit* allowed under this section for the tax year . . ." and makes no mention of carryforwards. The dissent concludes that the omission of the word "carryforward" from the sixth sentence was intentional, and signals the Legislature's intent not to permit refunds of credit in the form of carryforwards.

We do not find the use of the words "credit" and "carryforward" in a different sentence of § 1437(18) to be compelling in the interpretation of the word "credit" in the last sentence of that subsection. Again, tax credits in a given year are commonly understood to include carryforwards. See discussion *supra*. Moreover, it is apparent that the particular credit at issue—one that is carried forward from the SBTA—is expressly treated as a "credit under this section." Therefore, it is apparent that the carryforward sought to be refunded in this case is, without limitation, a credit. The dissent's interpretation essentially requires the conclusion that it is a credit for certain purposes, but at the same time, is not a credit for other purposes, based on a different sentence in the same statute. Such an interpretation is not supported by the plain language of the statute.

-7-

Furthermore, we find the history of the legislation at issue to be pertinent and instructive on this point. As originally enacted, MCL 208.1437(18) lacked a refund option. The subsection provided that:

> If the credit allowed under this section for the tax year and any unused carryforward of the credit allowed under this section exceed the qualified taxpayer's or assignee's tax liability for the tax year, that portion that exceeds the tax liability for the tax year shall not be refunded but may be carried forward to offset tax liability in subsequent tax years for 10 years or until used up, whichever occurs first. Except as otherwise provided in this subsection, the maximum time allowed under the carryforward provisions under this subsection begins with the tax year in which the certificate of completion is issued to the qualified taxpayer. If the qualified taxpayer assigns all or any portion of its credit approved under this section, the maximum time allowed under the carryforward provisions for an assignee begins to run with the tax year in which the assignment is made and the assignee first claims a credit, which shall be the same tax year. The maximum time allowed under the carryforward provisions for an annual credit amount for a credit allowed under subsection (4) begins to run in the tax year for which the annual credit amount is designated on the certificate of completion issued under this section. A credit carryforward available under section 38g of former 1975 PA 228 that is unused at the end of the last tax year may be claimed against the tax imposed under [sic] act for the years the carryforward would have been available under former 1975 PA 228. [2007 PA 36.]

Later, in 2008 PA 89, the Legislature added the refund provision at issue in this case, as well as the prefatory language of "[e]xcept as otherwise provided under this subsection . . . ." Hence, the refund option, with its broad reference to "credit allowed under this section," is a later-enacted provision that allowed the taxpayer to elect to liquidate the taxpayer's net excess credit (i.e., that which "exceeds the qualified taxpayer's tax liability for the year") and have 85 % of the excess amount refunded in exchange for forgoing the remaining 15 % and the option of any carryforward. The Legislature could have expressed an intent to prohibit a refund of credit amounts from carryforwards when it adopted this new refund provision, but it did not. Instead, it used the broad and encompassing term of "credit" when providing an option to liquidate a taxpayer's "credit allowed under this section for the tax year . . . ." There is no discernable explanation from reading the plain language of the text why there would be any reason to differentiate and treat disparately credit amounts based on the timing they were earned. The provision at issue expressly says that it applies to "credit allowed under this section for the tax year"; it does not say "credit allowed under this section and *earned during* the tax year." So long as the credit in question qualifies as a "credit allowed under this section"—which the carryforward of brownfield credits in the instant case does—the statute permits the election of an 85% refund option. We decline to read into the last sentence of § 1437(18) a prohibition on claiming a refund of credit from carryforwards when such prohibition is not apparent from the plain language of the statute.

## III. CONCLUSION

In light of the above analysis, we reverse the decision of the MTT and hold that petitioner was entitled to its elected refund for the 2008 tax year. As such, we reverse and remand for further proceedings consistent with this decision. We do not retain jurisdiction.[8]


/s/ Jane M. Beckering
/s/ Stephen L. Borrello

---

[8] In light of our resolution of this issue, we find it unnecessary to address petitioner's remaining claims.