*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COMERICA, INC.,

        Petitioner-Appellee/Cross-Appellant,

v

DEPARTMENT OF TREASURY,

        Respondent-Appellant/Cross-
        Appellee.

FOR PUBLICATION
April 16, 2020
9:05 a.m.

No. 344754
Tax Tribunal
LC No. 17-000150-TT

Before: BOONSTRA, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Respondent appeals, and petitioner cross-appeals, the Michigan Tax Tribunal's (the "tribunal") order granting partial summary disposition in favor of petitioner and partial summary disposition in favor of respondent under MCR 2.116(C)(10) (no genuine issue of material fact).

This matter involves the calculation of the franchise tax of a unitary business group (UBG)[1] under the Michigan Business Tax Act (MBTA), MCL 208.1101 *et seq.*, and the carryforward of

---

[1] A unitary business group means

> a group of United States persons, other than a foreign operating entity, 1 of which owns or controls, directly or indirectly, more than 50% of the ownership interest with voting rights or ownership interests that confer comparable rights to voting rights of the other United States persons, and that has business activities or operations which result in a flow of value between or among persons included in the unitary business group or has business activities or operations that are integrated with, are dependent upon, or contribute to each other. For purposes of this subsection, flow of value is determined by reviewing the totality of facts and circumstances of business activities and operations. [MCL 208.1117(6).]

-1-

tax credits under the Single Business Tax Act (SBTA), MCL 208.1 *et seq.*,[2] when two UBG entities merge and become a single entity. For the reasons stated herein, we vacate in part, reverse in part, and remand to the tribunal for further proceedings consistent with this opinion.

## I. FACTS & PROCEDURAL HISTORY

Petitioner is a bank holding corporation which owns about 40 subsidiary financial corporations. One such subsidiary was a state-chartered bank regulated by Michigan law ("Comerica-Michigan"). For strategic business reasons, petitioner decided to convert Comerica-Michigan into a Texas banking association. In order to accomplish this, petitioner created another subsidiary on October 8, 2007, a Texas banking association ("Comerica-Texas"), and on October 31, 2017, Comerica-Michigan merged into Comerica-Texas. At that point, Comerica-Michigan ceased to exist. All of Comerica-Michigan's rights, privileges, powers, franchises, and all property (real, personal, and mixed), as well as all debts, liabilities, and duties, vested in Comerica-Texas.

Petitioner filed Michigan Business Tax (MBT) returns for tax years 2008-2011, and included Comerica-Texas as a UBG member, but not Comerica-Michigan. For the 2008 tax year, the year in which the merger occurred, petitioner included Comerica-Texas's net capital, which is the taxpayer's tax base for purposes of the franchise tax, and reported Comerica-Michigan's historical net capital as effectively belonging to Comerica-Texas. Additionally, in its returns, petitioner claimed certain tax credits which Comerica-Michigan had earned under the SBTA. Overall, petitioner claimed a refund for each tax year.

In September 2013, respondent audited petitioner's 2008-2011 MBT returns and subsequently reduced petitioner's refund. The adjustment was due to respondent's calculation of petitioner's net capital and its disallowance of the claimed tax credits. Respondent treated Comerica-Texas and Comerica-Michigan as separate entities with their own net capital because the MBTA's averaging provision, MCL 208.1265, required an accounting for the years prior to the merger when Comerica-Michigan still had its own net capital. Respondent disallowed Comerica-Texas the Comerica-Michigan tax credits on the basis that the SBTA permitted the assignment of those credits only once. Because the credits previously had been assigned by a limited liability company to Comerica-Michigan in 2005, respondent concluded that they could not be reassigned to Comerica-Texas.

Petitioner disputed the refund reduction and requested an informal conference with respondent which took place before a departmental hearing referee. Following the informal conference, the hearing referee issued a recommendation upholding respondent's decision, which

---

[2] The SBTA, MCL 208.1 *et seq.*, was repealed by 2006 PA 325, effective December 31, 2007. The SBTA was replaced by the now-former MBTA, MCL 208.1101 *et seq.*, effective January 1, 2008. See 2007 PA 36. The MBTA was repealed by 2011 PA 39, and replaced with the Corporate Income Tax Act, MCL 206.601 *et seq.*, effective January 1, 2012. See 2011 PA 38. Although it was repealed in 2011 subject to certain conditions being satisfied, the MBTA still applies under certain circumstances. *Hudsonville Creamery & Ice Cream Co, LLC v Dep't of Treasury*, 314 Mich App 726, 729 n 1; 887 NW2d 641 (2016).

respondent adopted. Petitioner applied to the tribunal for a review of respondent's assessment and alleged that respondent had double counted petitioner's net capital when calculating the tax base. Petitioner further alleged that respondent wrongly disallowed the tax credits which, petitioner argued, transferred by operation of law via the merger, not by assignment. The parties filed cross-motions for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), and each party argued that their calculation of net capital was correct under the MBTA, and that their position on the tax credit issue was correct under the SBTA.

After oral argument, the tribunal granted partial summary disposition for petitioner and partial summary disposition for respondent. The tribunal found that respondent improperly calculated petitioner's net capital, and ordered that respondent recalculate the amount considering "only at the net capital of Comerica-TX for the current year, and previous years it was in existence, and averag[ing] the net capital for those years." The tribunal affirmed respondent's disallowance of the tax credits because the merger was not unintentional or involuntary and, therefore, it was not clear that a transfer by operation of law had occurred. The tribunal reasoned that the credits could only be transferred to a successor entity by assignment because they were privileges, not property rights, and thus, because the credits had been assigned once, "when Comerica-MI was extinguished, so were the tax credits."

Respondent moved for reconsideration and the tribunal denied the motion. This appeal and cross-appeal followed.

## II. STANDARDS OF REVIEW

Our review of the tribunal's decision is limited. If fraud is not claimed, we review the tribunal's decision for misapplication of the law or adoption of a wrong principle. *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010). We deem the tribunal's factual findings conclusive if they are supported by competent, material, and substantial evidence on the whole record. *Id*. We review de novo questions of statutory interpretation, and the grant or denial of a motion for summary disposition. *Id*. Summary disposition under MCR 2.116(C)(10) is proper if, after viewing all admissible evidence in a light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *West v GMC*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (citation omitted).

## III. ANALYSIS

### A. MICHIGAN BUSINESS TAX ACT

Respondent erred in its calculation of petitioner's tax base. The MBTA imposes a franchise tax on the tax base of financial institutions with a nexus in Michigan, including UBGs. MCL 208.1263(1); MCL 208.1261(f)(iii); MCL 208.1265; *TCF Nat'l Bank v Dep't of Treasury*, ___ Mich App ___; ___ NW2d ___ (2019); slip op at 5. "For a financial institution, tax base means the financial institution's net capital." MCL 208.1265(1). The MBTA's averaging provision, MCL 208.1265, specifies how net capital is calculated, *TCF Nat'l*, ___ Mich App at ___; slip op at 6, and states:

-3-

(1) For a financial institution, tax base means the financial institution's net capital. Net capital means equity capital as computed in accordance with generally accepted accounting principles less goodwill and the average daily book value of United States obligations and Michigan obligations. If the financial institution does not maintain its books and records in accordance with generally accepted accounting principles, net capital shall be computed in accordance with the books and records used by the financial institution, so long as the method fairly reflects the financial institution's net capital for purposes of the tax levied by this chapter. Net capital does not include up to 125% of the minimum regulatory capitalization requirements of a person subject to the tax imposed under chapter 2A.

(2) Net capital shall be determined by adding the financial institution's net capital as of the close of the current tax year and preceding 4 tax years and dividing the resulting sum by 5. If a financial institution has not been in existence for a period of 5 tax years, net capital shall be determined by adding together the financial institution's net capital for the number of tax years the financial institution has been in existence and dividing the resulting sum by the number of years the financial institution has been in existence. For purposes of this section, a partial year shall be treated as a full year.

(3) For a unitary business group of financial institutions, net capital calculated under this section does not include the investment of 1 member of the unitary business group in another member of that unitary business group.

(4) For purposes of this section, each of the following applies:

(a) A change in identity, form, or place of organization of 1 financial institution shall be treated as if a single financial institution had been in existence for the entire tax year in which the change occurred and each tax year after the change.

(b) The combination of 2 or more financial institutions into 1 shall be treated as if the constituent financial institutions had been a single financial institution in existence for the entire tax year in which the combination occurred and each tax year after the combination, and the book values and deductions for United States obligations and Michigan obligations of the constituent institutions shall be combined. A combination shall include any acquisition required to be accounted for by the surviving financial institution in accordance with generally accepted accounting principles or a statutory merger or consolidation.

Recently, we interpreted these statutory provisions in *TCF National Bank*, ___ Mich App at ___, and held that the MCL 205.1265 averaging formula must be applied to a UBG as a single taxpayer, rather than at the individual member level.

Respondent argues that *TCF National Bank* is inapplicable here because that case did not involve the merger of two subsidiary banks. We disagree. *TCF National Bank* considered the proper method for calculating net capital of UBGs generally, and we are required to interpret the same statutory provision at issue in this case, MCL 208.1265. *Id*.; slip op at 5. Our holding in

*TCF National Bank*, that the proper way to apply the averaging provision to a UBG pursuant to §§ 1265(1)-(3) is at the member level, is binding here and moots the parties' arguments regarding the interpretation of § 1265(4).[3]

Respondent further argues that our holding in *TCF National Bank* does not permit the negation of billions of dollars' worth of net capital, as would presumably occur here. However, the possibility that respondent may receive an unfavorable outcome is not a persuasive reason to set aside binding precedent.

Finally, respondent argues that application of *TCF National Bank* would render § 1265(4) surplusage. Our rules of statutory interpretation require us to give every word in a statute meaning, and avoid a construction that would render any part of the statute surplusage or nugatory. *Duffy v Michigan Dep't of Nat Res*, 490 Mich 198, 215; 805 NW2d 399 (2011). However, *TCF National Bank* does not apply to non-UBG financial institutions,[4] the combination of which, we agree, may implicate subsection (4). But, that is not the case in the matter before us. Thus, respondent's argument fails.

The tribunal's order directs respondent to recalculate petitioner's net capital by looking "only at the net capital of Comerica-TX for the current year, and previous years it was in existence . . . , and averag[ing] the net capital for those years." This methodology does not comply our holding in *TCF National Bank*, and therefore, we must vacate the portions of the order regarding petitioner's tax base, and remand this case to the tribunal. On remand, the tribunal shall enter an order directing respondent to recalculate petitioner's net capital in a manner consistent with our holding in *TCF National Bank*.

## B. SINGLE BUSINESS TAX ACT

Petitioner argues that we should reverse respondent's decision to disallow the tax credits and the tribunal's opinion and judgment affirming that determination. We agree.

The primary goal of statutory interpretation is to give effect to the intent of the Legislature, focusing first on the statute's plain language. *Hudsonville Creamery*, 314 Mich App at 733.

---

[3] See MCR 7.215(C)(2) (our published opinions have precedential effect under the rule of stare decisis); *WA Foote Mem Hosp v City of Jackson*, 262 Mich App 333, 341; 686 NW2d 9 (2004) (a case is stare decisis on a particular point of law if the issue was raised in the action decided by the court, and its decision made part of the opinion of the case); *Terra Energy, Ltd v Michigan*, 241 Mich App 393, 399; 616 NW2d 691 (2000) (a case is stare decisis on a particular point of law if the issue was raised in the action and decided by the Court, and the decision was included in the opinion).

[4] In addition to a UBG and its members, the definition of "financial institution" includes "a bank holding company, a national bank, a state chartered bank, an office of thrift supervision chartered bank or thrift institution, a savings and loan holding company other than a diversified savings and loan holding company as defined in 12 USC 1467a(a)(F), or a federally chartered farm credit system institution." MCL 208.1261(f)(*i*).

Agency interpretations are entitled to respectful consideration, but they are not binding on courts and cannot conflict with the plain meaning of the statute. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 117-118; 754 NW2d 259 (2008).

If a statute is unambiguous, judicial construction is neither required nor permitted, and the statute must be enforced as written. *Diallo v LaRochelle*, 310 Mich App 411, 417-418; 871 NW2d 724 (2015). A statute is not made ambiguous merely because a term it contains is undefined. *Id*. at 418. If a statute does not define a word, it is appropriate to consult dictionary definitions to determine the plain and ordinary meaning of the word. *Id*. "A legal term of art, however, must be construed in accordance with its peculiar and appropriate legal meaning." *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008). However, "nothing may be read into a statute that is not within the intent of the Legislature apparent from the language of the statute itself." *Detroit Pub Sch v Conn*, 308 Mich App 234, 248; 863 NW2d 373 (2014). In other words, we must not judicially legislate by adding into a statute provisions that the Legislature did not include. *Pike v N Michigan Univ*, 327 Mich App 683, 697; 935 NW2d 86.

The parties agree that the SBTA permits a single assignment of tax credits, and that the credits were assigned once, before the merger of Comerica-Michigan and Comerica-Texas. However, the parties dispute whether the SBTA permits the credits to transfer by means other than an assignment, i.e., whether there was a transfer by operation of law through the merger. We conclude that the SBTA's single-assignment limitation applies only to assignments, and not to transfers made by operation of law. Because the tax credits here transferred by operation of law pursuant to the merger statute, MCL 487.13703(1), they were not subject to the single-assignment limitation.

> MCL 208.38g(18) provides:
>
> Except as otherwise provided in this subsection . . . the qualified taxpayer may assign all or a portion of a credit allowed under subsection (2) or (3) to its partners, members, or shareholders . . . . A credit assignment under this subsection is irrevocable . . . . A partner, member, or shareholder that is an *assignee shall not subsequently assign a credit* or any portion of a credit assigned under this subsection. [Emphasis added.]

Additionally, MCL 208.39c(7) contains the same single-assignment limitation:

> Except as otherwise provided in this subsection . . . the qualified taxpayer may assign all or a portion of a credit allowed under subsection (2) or (3) to its partners, members, or shareholders . . . . A credit assignment under this subsection is irrevocable . . . . A partner, member, or shareholder that is an *assignee shall not subsequently assign a credit* or any portion of a credit assigned under this subsection. [Emphasis added.]

Plainly, the statutory language permits an initial assignment of the credits. By making that assignment irrevocable and mandating that "an assignee shall not subsequently assign a credit or any portion of a credit assigned under this subsection," the statutes also prohibit any assignment beyond the first initial assignment. However, the statutes address only transfers made by

assignment, and are silent regarding transfers made by any other mechanism, such as transfers made by operation of law pursuant to a merger of entities. As such, the statutory single-assignment limitation does not apply to these types of conveyances. Under the doctrine of "of *expressio unius est exclusio alterius*, which means the express mention of one thing implies the exclusion of another," the Legislature's use of the term "assignment," to the exclusion of other types of transfers, indicates an intent to prohibit only more than one assignment, but not other types of transfers. *MidAmerican Energy Co v Dep't of Treasury*, 308 Mich App 362, 370; 863 NW2d 387 (2014). To find otherwise would require that we read into the SBTA additional limitations which the Legislature has omitted. *City of Fraser v Almeda Univ*, 314 Mich App 79, 99; 886 NW2d 730 (2016). "When the Legislature fails to address a concern in the statute with a specific provision, the courts cannot insert a provision simply because it would have been wise of the Legislature to do so to effect the statute's purpose." *Id*. Thus, we reject respondent's argument that the SBTA prohibits all transfers beyond that permitted by a single assignment.

Additionally, under Michigan jurisprudence, transfers by assignment are distinct from transfers by operation of law. In *Kim v JPMorgan Chase Bank, NA*, 493 Mich 98, 111; 825 NW2d 329 (2012), our Supreme Court recognized the difference between transfers by assignment and those made by operation of law, such as in the context of a merger. That case addressed the applicability of MCL 600.3204, which requires that all mortgage assignments (except assignments effected by operation of law) must be recorded before initiation of a foreclosure by advertisement, when the mortgage at issue was acquired through a voluntary purchase agreement. *Id*. at 102. The Court considered the nature of transfers made by operation of law, which it defined as "the manner in which a party acquires rights *without any act of his own*." *Id*. at 110 (emphasis in original). The Court explained that "a transfer that takes place by operation of law occurs unintentionally, involuntarily, or through no affirmative act of the transferee." *Id*. The Court concluded that a voluntary purchase agreement did not constitute a transfer by operation of law, as would have happened if a mortgage had transferred as a result of a merger under traditional banking and corporate law. *Id*. at 111, citing 12 USC 215a(e) and MCL 450.1724(1)(b). Here, the tax credits were not purchased by Comerica-Texas, but were acquired by operation of law when Comerica-Michigan merged into Comerica-Texas.

In sum, the statutes' failure to reference transfers that occur by operation of law, through merger or otherwise, is not synonymous with a prohibition against such transfers. The tribunal effectively read a prohibition into the statutes that does not exist on the basis that tax exemption statutes are to be strictly construed against the taxpayer. Although tax credit statutes are to be strictly construed in favor of the taxing unit, *Auto-Owners Ins Co v Dep't of Treasury*, 226 Mich App 618, 621; 575 NW2d 770 (1997), tax credits are distinct creatures of tax law, subject to ordinary rules of statutory construction, and judicial construction is not necessary or permitted where the statute is unambiguous. *Stege v Dep't of Treasury*, 252 Mich App 183, 194; 651 NW2d 164 (2002); *Ashley Capital LLC v Dep't of Treasury*, 314 Mich App 1, 7; 884 NW2d 848 (2015). Had the Legislature intended to prohibit transfer of the tax credits by operation of law, it could have done so, but it did not. We must presume the Legislature intended the language it plainly expressed. *Pohutski v Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002).

Additionally, the tribunal found that the credits did not transfer by operation of law because "it [was] far from clear that the transfer of credits from one entity to another was unintentional or involuntary, as the entities were both formed by [petitioner]." We disagree.

"A corporation is a creature of statute, unable to exist except by the force of express law." *Handley v Wyandotte Chemicals Corp*, 118 Mich App 423, 425; 325 NW2d 447 (1982). "Consequently, the effect of a merger or consolidation on the existing constituent corporations depends upon the terms of the statute under which the merger or consolidation is accomplished." *Id*. See also Cox and Hazen, 4 Treatise on the Law of Corporations § 22:2 (3d) (in a merger, assets and business are transferred "by operation of law—that is, by force of the statute operating on the [merger] agreement"). Under Michigan law, when a merger occurs,

> the consolidated bank possesses all the rights, interests, privileges, powers, and franchises and is subject to all the restrictions, disabilities, liabilities, and duties of each of the consolidating organizations. The title to all property, real, personal, and mixed, is transferred to the consolidated bank, and shall not revert or be in any way impaired by reason of this act. [MCL 487.13703(1).]

The tribunal concluded that tax credits are privileges—not property interests. We disagree. "Property, as ordinarily understood, extends to every kind of valuable right and interest." *United States v Hoffman*, 901 F3d 523, 536 (CA 5, 2018) (holding that state issued tax credits are "property" within the meaning of federal wire and mail fraud statutes), citing *Pasquantino v United States*, 544 US 349, 356; 125 S Ct 1766; 161 L Ed2d 619 (2005) (holding that tax revenue due to a foreign government is "property" under federal fraud statutes). See also *Segal v Rochelle*, 382 US 375; 86 S Ct 511; 26 L Ed 428 (1966) (holding that under the federal Bankruptcy Act the right to receive a tax refund is a future right, generally recognized as a property interest, and a contingency might affect the value of the interest, but cannot negate the existence of the property interest at the time of filing ). While the mere expectation of a government entitlement may not constitute a cognizable property interest, a legitimate claim of entitlement would. See, e.g., *Board of Regents v Roth,* 408 US 564, 577; 92 S Ct 2701; 33 L Ed2d 548 (1972) (considering whether a property interest exists in continued state employment in a due process claim); *Barrington Cove, LP v RI Hous & Mortg Fin Corp*, 246 F3d 1, 5-6 (CA 1, 2001) (finding in a due process claim that there was no property interest in a claimed federal tax credit where the federal statute did not prescribe conditions for obtaining the credits); *Reed v Village of Shorewood,* 704 F2d 943, 948 (CA 7, 1983) (observing that a cognizable property interest "is what is securely and durable yours under state [or federal] law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain"), overruled in part on other grounds by *Brunson v Murray*, 843 F3d 698, 713 (CA 7, 2016). We have held that a claim for a tax refund is a mere expectation, not a vested right subject to due process, *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 371; 803 NW2d 698 (2010). But, the case before us concerns the transfer of certified tax credits in a merger—not a mere expectation that tax credits could be obtainable in the future. *Id*. Thus, we conclude that the tax credits in controversy constitute property interests within the meaning of the merger statute, MCL 487.13703(1). *Hoffman*, 901 F3d at 538. See also *Virginia Historic Tax Credit Fund 2001 LP v CIR*, 639 F3d 129, 141 (CA 4, 2011) (finding that a transfer of tax credits constituted a transfer of property, but declining to decide whether tax credits always constitute property); *Brandon Bay, Ltd Pship v Payette Co*, 142 Idaho 681, 684; 132 P3d

438 (2006) (tax credits are not contractual rights, but "rights and privileges" that flow from property and are equivalent to income).[5]

Because the tax credits are property and fall within the ambit of the merger statute, we conclude that they transferred by operation of law when the merger of Comerica-Michigan and Comerica-Texas, two separate entities, occurred. In concluding that petitioner acted voluntarily and affirmatively in conducting the merger, the tribunal conflated the voluntary act of merger with the automatic transfer of assets resulting from that merger. Here, the voluntary act of merging, subject to MCL 487.1307(1), automatically transferred the tax credits by operation of law, and precluded application of the SBTA's single-assignment provisions.[6] Therefore, we reverse the tribunal's decision to disallow the tax credits.[7]

## IV. CONCLUSION

---

[5] We are not bound by the decisions of lower federal courts, or decisions of other states, but may look to such sources as persuasive authority. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004); *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 559 n 38; 705 NW2d 365 (2005).

MCL 450.1724(1)(b) provides that when a merger occurs, "[t]he title to all real estate and other property and rights owned by each corporation party to the merger are vested in the surviving corporation without reversion or impairment." However, under the Banking Code, MCL 487.11101 *et seq.*, both state and out-of-state banks are considered "banking corporations." MCL 487.11201(g); MCL 487.11202(q). The Michigan Business Corporation Act, MCL 450.1101 *et seq.*, "does not apply to . . . banking corporations." MCL 450.1123(2). Additionally, between the two merger statutes, MCL 487.13703(1) controls because it is more specific than MCL 450.1724(1)(b). *Tyra v Organ Procurement Agency of Michigan*, 498 Mich 68, 94; 869 NW2d 213 (2015) (more specific statutory provisions control over more general statutory provisions). See also Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 183.

Because we conclude that tax credits are property rights, they would transfer by operation of law under either merger statute. Even if we agreed with the tribunal's conclusion that the tax credits are "privileges," they would still fall within the ambit of "all the rights, interests, privileges, powers, and franchises" of Comerica-Michigan as described in MCL 487.13703(1). However, we cannot conclude that the tax credits as "privileges" would transfer by operation of law under the more restrictive language in MCL 450.1724(1)(b), and because that issue is not before us, we decline to make any such finding here.

[6] MCL 208.38g(18) and MCL 208.39c(7).

[7] By concluding that that the SBTA does not prohibit the transfer of tax credits by operation of law, and that petitioner obtained the credits by operation of law through the merger, we need not address petitioner's argument regarding the relevancy of federal tax law. Nor do we need to consider respondent's argument that there is an existing question of fact regarding the amount of the tax credits. The parties are free to raise that issue before the tribunal on remand.

For these reasons, we vacate the tribunal's grant of partial summary disposition in favor of petitioner on the issue of petitioner's tax base calculation, and we reverse the tribunal's grant of summary disposition in favor of respondent on the issue of petitioner's claimed tax credits.  The matter is remanded to the tribunal for further proceedings consistent with this opinion.  We do not retain jurisdiction.  Petitioner, having prevailed on appeal, may tax costs pursuant to MCR 7.219.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan
/s/ James Robert Redford